# TARVER v. NANCE.

1. The want of funds in the hands of the drawee of a bill, furnishes a sufficient excuse for the failure of the holder to present it for acceptance, and give notice with promptness to the drawer, of its dishonor.

2. A plea which denies that the plaintiff who sues as indorsee of a bill, is its legal proprietor, but affirms that it is the property of an association of individuals, of which the plaintiff is one, and that the plaintiff filled up a blank indorsement of the company with his own name, must be verified as required by the statute, which prescribes the manner in which the burthen of proving an assignment shall be thrown upon the plaintiff.

3. J A T and B F T sue out a writ of error, and enter into bond with surety for its successful prosecution ; in the Supreme Court the writ of error is amended by striking out the name of B F T, so as to make it conform to the judgment of the circuit court, which is against J A T alone : *Held*, that the Supreme Court could render no judgment against the surety upon his bond, as B F T, one of his principals, had ceased to be a party to the cause, by order of the court. Whether a recovery could be had against the surety upon his bond as a common law obligation, *quare ?*

WRIT of Error to the Circuit Court of Lowndes.

The defendant in error declared against the plaintiff as the drawer of a bill of exchange, dated September 12th, 1838, requesting Messrs. Robinson & Dejarnette, one hundred and twenty days after date, to pay to the order of Ben. F. Tarver, five thousand dollars, negotiable and payable at the Bank of Mobile. The bill is indorsed by the payee to John Tipton, and by the latter to the plaintiff below. In the first count it is alleged, that payment of the bill was regularly demanded at the place designated therein, on the 12th January, 1839; that payment was refused, and due notice thereof given to the drawer, &c. The second count avers that the bill was duly presented for acceptance on the 12th January, 1839; *and further*, that " at the time of the making of the said last mentioned bill of exchange, and from thence until, and at the time when the same was so presented and shown to the said Robinson & Dejarnette for their acceptance thereof as aforesaid, they, the said Robinson & Dejarnette had not in their hands, any effects of the said defendant, nor had they received any consideration from the said defendant for the acceptance or payment by them the said Robinson & Dejarnette, of the said last mentioned bill of exchange, nor hath the said defendant sustained any damage by reason of his not having had notice of the non-acceptance of the said Robinson & Dejarnette of the said last mentioned bill of exchange; of all of which said several premises, said defendant on the day and year last aforesaid had notice, &c." To each of these counts the defendant demurred, and his demurrer being overruled, he pleaded six pleas, on the three former of which issue was joined, and to the latter he demurred, and his demurrer being sustained, the cause was tried by the jury on the issues of fact, who returned a verdict for the plaintiff, on which a judgment was rendered.

The fourth plea alleges that the contract on which the bill in question was drawn, was a partnership transaction, involving the interest of a company of individuals styled the " Real Estate Banking company of South Alabama, at Selma;" that the bill was the property of the company, under a contract made with them through their agent, was drawn by the defendant and indorsed by B. F. Tarver and John Tipton, for the purpose of being negotiated to the company, and was in fact so negotiated, and was thus

and not otherwise drawn and indorsed, and did not until purchased by the company, become a security for the payment of money. That the plaintiff has no title to the bill; that himself and Tipton, as well as others, are members of the company, and its business as a partnership, is still unsettled.

The fifth plea alleges, that the plaintiff never was the legal or equitable owner of the bill, but the same was concocted by the drawer and indorsers, for the purpose of being negotiated to the company, as in the fourth plea mentioned; that Tipton was a member of the company and indorsed the bill in blank, that the same might pass to and vest in them : that the plaintiff was also a member of the company and filled up the indorsement to himself, without any consideration, contrary to the intention of the contracting parties.

The sixth plea alleges, that the bill was drawn and indorsed as aforesaid in blank, for the purpose of selling to the company; that the company, was composed of several individuals named, and others unknown to the defendant; that the bill was sold by the drawer to the company for the purpose of raising money, and was bought by them or their agent with their own notes, and while the bill was the property of the company, the plaintiff filled up the indorsement of Tipton to himself, that the drawer might not be able to pay the same in the notes or bills of the company.

To the ruling of the circuit judge, the defendant excepted, but as errors are only assigned in overruling the demurrers to the declaration, and sustaining the demurrers to the pleas, the bill of exceptions need not be particularly noticed.

G. W. GAYLE and PECK, for the plaintiff in error, insisted, 1. That the demurrer to the second count should have been sustained, because it did not aver a notice of presentment and non-acceptance of the bill by the drawees, or any thing equivalent thereto; and cited 9 Porter's Rep. 300; 2 Brock. Rep. 20; 10 Pet. Rep. 572. 2. The fourth plea is good, because it shows the bill to be the property of the banking company, of which the plaintiff was a member; [1 Porter's Rep. 201.] 3. The fifth plea is good, because it shows, that no consideration ever passed from Nance to the drawer or either of the indorsers; that the bill was drawn and indorsed for the purpose of being negotiated to the company, of which the plaintiff was only a member; that according to the

original intention the bill was thus negotiated, and plaintiff filled up the last indorsement to himself without having any right to appropriate the bill to himself. 4. The sixth plea is bad, because by filling up the indorsement to the plaintiff, the defendant is denied the right of paying the bill in the notes of the company. 5. But if all these grounds fail, and the judgment should be affirmed, then there can be no recovery against B. F. Tarver and the surety in the writ of error bond.

W. HUNTER, for the defendant in error. 1. The declaration is clearly good; it excuses the averment of notice by an equivalent allegation. If the the defendant had any just pretence for drawing the bill, it is matter of proof which he should show in his defence. 2. The pleas are certainly bad, because they, in effect, deny the indorsement under which the plaintiff deduces a title, and under the statute should have been verified by an oath. [See Beal and Bennett v. Snedicor, 8 Porter's Rep. 523; Jennings v. Cummings & Mason, 9 Porter's Rep. 309.] 3. As to the writ of error bond, J. A. and B. F. Tarver may be treated as principals; as to what is said of the latter being security in a forthcoming bond, it may be rejected as surplusage.

COLLIER, C. J.—1. The second count is clearly good, even conceding that the want of funds in the hands of the drawee will not excuse the want of notice to the drawer, where the bill was drawn in good faith and upon a just expectation that it would be paid. Where such is the law, if the drawee have *no funds* of the drawer, it is only necessary to prove this fact, to entitle the holder to recover; and if the drawer would bring himself within some exception to the rule, it is incumbent on him to adduce the appropriate proof. In the absence of evidence shewing that the want of effects in the drawee's hands, should not excuse the omission to give notice in the particular case, the conclusion of law is that the drawer has not been prejudiced, and his liability to pay the bill is a necessary consequence. This is the law as applicable to the evidence, and not only the precedents, but principle shows, that the rule of pleading is in harmony with it. The plaintiff generally need only allege what he is bound to prove to entitle himself to judgment. In the present case, this has been done, even according to the view of the law which has been pres-

sed by the counsel for the plaintiff in error. If a defendant would avail himself of exceptions or matters of avoidance, the burthen of doing this rests upon him.

But the second count of the declaration is drawn strictly according to law, as it has been settled in this State, and if sustained by proof entitled the plaintiff to a verdict without regard to the circumstances under which the bill was drawn. In Shirley v. Fellows, Wadsworth & Co. [9 Porter's Rep. 300,] the rule is laid down broadly, that if one draws a bill without having funds in the hands of the drawee, he cannot avail himself of the want of notice of the dishonor as relieving him from liability to pay it. "It would be most iniquitous" says the court "for him to claim a discharge from an actual debt, when he has either substituted no liability on another, or that other, if he paid the debt, would possess the clear and undisputed right to again recover the amount from his drawer." In Foard v. Womack, [2 Ala. Rep. N. S. 368,] the precise question was again considered, with reference not only to our own decisions, but to some of the adjudications of other courts in this country and in England; and the previous case was re-affirmed. It is really difficult to conceive why the drawer should be allowed to insist upon notice in a case like the present, where he could not be prejudiced by the want of it. Why should not the holder be permitted to maintain an action against the drawer in any case, in which the drawee could, if he had paid the bill. It might perhaps have been well if no exception had been made to the rule which requires notice to be given, but we think it would be more reasonable and consonant to the principles of moral justice, to extend the exception to all cases where the drawee has no effects of the drawer in hand, or no steps have been taken to put him in funds. But it is unnecessary to consider this branch of the case at greater length, as we have already seen that the demurrer to the declaration was rightly overruled.

2. Independently of the question whether the pleas disclose a good defence to the action, it is objected that they are not well pleaded, but should have been verified by affidavit. The act of eighteen hundred and nineteen "to regulate the proceedings in the courts of law and equity in this State" enacts, "when any suit shall be instituted by any person, or persons, as assignee or assignees of any bond or other writing, it shall not be necessary for the plaintiff or plaintiffs, to prove the assignment or assign-

ments, unless the defendant or defendants shall annex to a plea denying such assignment or assignments an affidavit, stating that such defendant or defendants, verily believe that some one or more of such assignments were forged; or make oath to the same effect in open court, at the time of filing such plea." [Aik. Dig. 283, § 144.]

In Beal & Bennet v. Snedicor, [8 Porter's Rep. 523,] the plaintiff sued as the indorsee of the payees of a promissory note, and the defendants pleaded that the note sued on, was not, at the commencement of the action, the property of the plaintiff, but then was, and still is, the property of the payees. This plea was adjudged bad on demurrer, because it was not verified as required by the act cited. To the same effect is Jennings v. Cummings & Mason, [9 Porter's Rep. 309.] So under the statute which declares, that it shall not be lawful for the defendant in any suit to deny the execution of any writing, the foundation of an action, unless it be by plea supported by affidavit, [Aik. Dig. 283,]—it has been decided, that where one of several defendants sued on a promissory note as partners, proposes to show, that he was not a partner, he must put in issue the making or adoption of the note by plea supported by affidavit. [Fowlkes & Co. v. Baldwin, Kent & Co. 2 Ala. Rep. N. S. 705.] And under the statute last cited, it was held that a plea which denies that the writing declared on, is the defendant's act *in law*, or in other words insists, that it was not intended to impose a legal obligation, or duty upon him, comes within the spirit and intention of the act, and must be verified by affidavit. [Lazarus, use &c. v. Shearer, 2 Ala. Rep. N. S. 718.]

The pleas demurred to, are clearly defective for the want of the verification required by statute. They all affirm, in effect, that the bill in suit is not the individual property of the plaintiff; that an association of individuals styled the "Real Estate Banking Company of South Alabama at Selma" are its proprietors, and that after it was indorsed to them by a blank indorsement, the plaintiff inserted his name as the last indorsee. These facts are most explicitly alleged in the fourth and fifth pleas, and would seem to be inferrable from the manner in which the sixth plea sets out the indorsement under which the plaintiff deduces title. But the latter plea is objectionable for other reasons. It does not allege that the defendant or either of the indorsers of the bill

ever proposed to pay it in the notes of the company, or that they are now ready and willing thus to pay it; in the absence of any averment of this kind, it cannot be known that the defendant has been prejudiced by the indorsement having been filled up to the plaintiff.

3. The writ of error was sued out in the name of "John A. Tarver and Benjamin F. Tarver, his security in a forthcoming bond," and a bond executed by them, conditioned for its prosecution with effect. But the writ of error has been here amended so as to make it conform to the judgment of the circuit court, which is against John A. Tarver only; and it is objected that there can be no judgment against the surety in the writ of error bond. This objection is made upon the ground, that as the surety undertook for both the plaintiffs in the writ or error, and one of them has ceased to be a party, the surety is discharged.

In Curry v. Barclay, [3 Ala. Rep. 484,] it was held, where the condition of the writ of error bond recites that the judgment sought to be reversed was against two, when in fact it was against one only, this court will not render a judgment against the surety in the bond. In the present case, both John A. and B. F. Tarver appear by the writ of error, and the recital in the condition of the bond, to complain of the judgment of the circuit court, and both of them are principals as it respects the surety. This being the case, we think that the judgment can only be here rendered against John A. Tarver.

But as the effect of the writ of error and bond, was to suspend proceedings upon the judgment until the action of this court was had in the matter, the defendant is entitled to the damages allowed by the statute on a judgment of affirmance in such cases. In declining to render a judgment against the surety, we only determine that he is not liable in the manner provided by the *statute*, without in any manner considering the question of his liability upon the bond as imposing a common law obligation. We have only to add that the judgment of the circuit court is affirmed.