# New York and Alabama Contracting Company v. Selma Savings Bank.

*Action on Foreign Bill of Exchange, by Indorsee against Drawer and Indorser.*

1. *Notice to agent of dishonor of bill.* — To charge a party with notice of the dishonor of a bill of exchange, because notice was given to another person as his agent, it must be shown that it was within the scope of the agent's duties to receive such notice; and the mere fact that he was "the financial agent" of his principal is not sufficient proof of this.

2. *Notice to partner of dishonor of bill.* — When a bill of exchange is drawn by one partnership on another, and accepted by the latter, and the two partnerships have a common partner, notice of the dishonor of the bill is not necessary to charge the drawers.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. M. J. SAFFOLD.

JOHN WHITE, for the appellants.

PETTUS & DAWSON, *contra.*

BRICKELL, J. — This action was brought by the appellee, a corporation chartered under the laws of this State, against the appellant, a partnership composed of several persons; and was founded on a foreign bill of exchange, which was drawn and indorsed by the said defendant, at Selma, Alabama, and accepted by Roddy, Bell & Co., of New York city. The bill was presented at maturity for payment, which was refused, and it was thereupon protested for non-payment.

Notice of the dishonor of a bill may certainly be given to an agent of the party to be notified. If the notice is left at the place of business, or at the abode of the party to be charged, with any one found there, acting as the representative or servant of the party, it is, in general, sufficient; the diligence demanded by the law is observed. If there is default in receiving such notice, it is attributable to the person left by the party in charge of the place of business, or dwelling, and he should bear the consequences of the negligence of such person, and not the holder, who had no choice in his selection, or in placing him in a position in which injury could ensue from his conduct. When, however, notice is not thus given, but it is sought to charge a party because of notice to another as his agent, the rule obtains, which is of almost universal application, that evidence of the authority of the agent must be given. In this case, there is no evidence on this point, except that Roddy, Bell & Co. were "the *financial agents*" of the appellants. What were their duties, or the extent of their authority, is not shown. We may infer that their agency had some relation to the finances of the appellants; but what that relation was, would be matter of conjecture. We cannot infer from this statement, that they had authority to draw, indorse, or pay bills drawn or indorsed by appellants. The evidence is too indefinite to justify us in charging the appellants with notice, because Roddy, Bell & Co. were their "financial agents," and had knowledge of the dishonor of the bill. If the mere knowledge of an agent, of the dishonor of a bill, will ever excuse notice, or justify the imputation of notice to the principal, the knowledge must be derived by the agent while in the exercise of the authority the principal has conferred, and the authority must extend to the reception of notice. An agent may be employed to borrow money for his principal; but

[New York and Alabama Contracting Company *v.* Selma Savings Bank.]

it would not be insisted, though he was styled a "financial agent," that he had authority to receive notice of the dishonor of a bill, drawn or indorsed by his principal, in a transaction of which he had no knowledge. So, an agent may be appointed to receive moneys for his principal at a particular place; but no authority to receive notice of the dishonor of a bill, drawn or indorsed by his principal, payable at that place, could be inferred or implied. When he received the money of his principal, his power is exhausted. He would, in an enlarged sense of the term, be a "financial agent" of the principal, and so of every agent charged with any duty or authority over the moneys of a commercial partnership, whether it pertains to receiving, or safe keeping, or disbursement. It would be an infringement of the just and salutary rule, that requires satisfactory evidence of the authority of an agent, from him who relies on it, to charge the appellants with notice of the dishonor of the bill, because their "financial agents" had knowledge of it, in the absence of all evidence of the authority they had conferred.

2. As a general rule, when notice of a fact is necessary to fix the liability of a partnership, notice to any one of the partners is notice to all. This results from the legal nature and character of a partnership. Each member represents not himself, but the partnership in its entirety, or personality. He can exercise all the authority, transact all the business, incur or discharge all the liabilities, which the partners acting conjointly could, unless restrained by special contract or agreement. Whatever is known to him and falls within the line of partnership business, is necessarily known to the firm. Whatever notice is given him, pertaining to partnership affairs, is given the partnership. Hence, it was held by this court in *Brown* v. *Turner* (15 Ala. 832), that a demand of payment of a bill of exchange, accepted by a partnership which was subsequently dissolved, could well be made of an agent of one of the partners. On the same principle rests the case of *Coster, Robinson & Co.* v. *Thomason* (1 Ala. 717), in which it is held, that when a bill, indorsed by a partnership, is dishonored after the dissolution, notice to any one of the late partners charges all. The general rule is thus stated by the elementary writers: "Notice to one member of a partnership, which indorses a note or bill, is notice to all, because each partner represents the interest of the other partners and of the partnership." 1 Parsons Notes & Bills, 502.

We can perceive no solid reason for refusing to apply this general rule, when a bill is made and indorsed by one partnership, and accepted by another, each partnership having a common member. If the bill is dishonored, it is the default of the

[New York and Alabama Contracting Company *v.* Selma Savings Bank.]

acceptors, who are primarily liable to pay it. The object of notice of dishonor — of notice of the default — is, that the drawer or indorser may have seasonable opportunity of protecting himself, by arranging his affairs with the drawer or acceptor, — withdrawing any funds he may have transmitted for meeting the bill, or taking · any other necessary or legal step for his protection. The injury which may be consequent on the .failure to afford the drawer this seasonable opportunity, by notice of the dishonor, is the reason of his discharge. When the failure works him no injury, he is not discharged, for the reason ceases. A drawer who has no funds in the hands of the drawee from the drawing to the maturity of the bill, is not entitled to notice of its dishonor. *Ford* v. *Womack*, 2 Ala. 368; *Tarver* v. *Nance*, 5 Ala. 712. So, if the bill is accepted for his accommodation. *Evans* v. *Norris*, 1 Ala. 511. In these cases, the drawer on the dishonor has no right of recovery against the drawee or acceptor, and no injury ensues from the want of notice. A partnership being regarded as an entirety; each partner having all the power the partnership has; subject to all its duties and liabilities, bound to take every step for its protection which any other or all the members could conjointly take, if they so acted, where is the necessity of giving notice of the dishonor of a bill, when the dishonor is the default of one of the partners? What injury can ensue, which his knowledge of the dishonor does not afford him full opportunity of providing against, — as full opportunity, as if notice was given every other individual member of the partnership? Why should notice of his own default be required? The only right of recovery, which the drawing partnership has, is equitable. No suit at law could be maintained against the defaulting acceptors or drawees; for in suits by or against a partnership, all the partners must be joined, and one person would stand in the relation of plaintiff and of defendant. The remedy in equity is rather for an accounting, than for the recovery of a specific debt. The state of accounts is supposed to be known to each partnership, and to each individual member thereof. This equitable remedy the common partner can as well pursue, if necessary for the protection of the drawing partnership, as any other partner. No possible legal injury results from the failure to give the partnership notice of the dishonor of the bill, which is already known to one partner, and whose knowledge is notice. *Porthouse* v. *Parker*, 1 Camp. 82. Any other rule seems to us to contemplate a severance of the partnership, as if its individual members had distinct rights, and antagonistic duties and liabilities, which cannot be admitted at law, in transactions involving the rights of third persons. In *Jacaud* v. *French* (12 East, 317), Jacaud was a

[Tarver v. Tankersley.]

partner with Blair in one mercantile house, and with Gordon in another. A bill of exchange was indorsed by the one firm to the other, and subsequently the indorsers were provided with funds which they promised to apply to the satisfaction of the bill at maturity. They failed to make the application, and the indorsees on the dishonor of the bill sued the acceptors. The suit was not maintained. Lord ELLENBOROUGH said : "It is impossible to sever the individuality of the person. Jacaud, being a partner with Blair, must be considered as having, together with Blair, received money from the drawers to take up this very bill. How then can he, because he is also a partner with Gordon in another house, be permitted to contravene his own act, and sue upon the bill which has been already satisfied as to him. If A. and B., partners, receive money to apply to a particular purpose, A. and C. in another partnership could never be permitted to contravene the receipt of it for that purpose, and apply it to another." The principle of this decision is the unity of a partnership — the impossibility of severing the act of one partner in partnership affairs from the act of the partnership. It has a proper application to the question we are considering. Notice to Roddy, of the dishonor of the bill, must, unless we recognize a severance of partnership, separate him from it, and treat him as standing in an antagonistic relation to it, be deemed notice to the partnership. Such was in effect the decision in *Porthouse* v. *Parker*, 1 Camp. 82 ; *Gowan* v. *Jackson*, 20 Johns. 176 ; *Branch Bank* v. *Fulmer*, 3 Penn. 399. The evidence being undisputed, the court did not err in charging the jury, the appellees were entitled to recover.

The charge to the jury as to the measure of the plaintiff's recovery worked no injury to the appellants, as the verdict does not exceed the amount for which, under the disputed facts, they are liable. We find in the record no error authorizing a reversal, and the judgment is affirmed.