## Winter *v.* The City Council of Montgomery.

*Action for Taxes Paid under Protest.*

1.   *When action lies to recover money paid on illegal tax.*—To support an action for money had and received against a municipal corporation, to recover takes illegally assessed and collected, two facts must concur : 1st, a want of authority for the imposition of the tax, rendering the proceedings, not merely irregular, but absolutely void; and, 2d, a payment under compulsion, or duress, to avoid an arrest, or to prevent the seizure of goods, and not merely under protest.

2.   *Constitutionality of statutes; how determined by courts.*—To justify the courts in pronouncing a statute void, it must be violative of some constitutional provision, State or Federal, or must be an attempted exercise of power not legislative in its character, or of power committed to some other department of the government; but, whether the policy of the statute is sound, whether it will promote the public good, whether it is in harmony with natural right and abstract justice, and whether the legislature, in its passage, observed a care and caution commensurate with the importance of the interests and questions involved,—these are not judicial questions.

3.   *Special statute authorizing city of Montgomery to aid in construction of South and North Alabama railroad; omission of agreed propositions, to be submitted to vote of citizens.*—In the act approved December 7th, 1866, entitled "An act to authorize the city of Montgomery to aid in building and equipping the South and North Alabama railroad from Montgomery to Limekiln," the failure to set out at length, or in substance, the propositions which had been agreed on between the directors of the railroad and the city council, and on which a vote of the citizens was to be taken, under the provisions of said act, to ascertain whether aid should be extended by the city to said railroad, does not affect the validity of the act ; there being no constitutional provision then of force, and no prescribed mode of legislative procedure, which required their insertion, and the omission not causing any doubt or uncertainty in the act itself.

4.   *Same ; election by vote of citizens ; certificate of managers as to result.*—Under the provisions of said act, the managers of the election, to be held for the purpose of testing the sense of the citizens on the question of aid *vel non,* were appointed by the mayor, and were required by the act to certify to him the result of the election; but they were not constituted a special tribunal, clothed with the exclusive power of determining the result; nor was their certificate the only evidence of the result which the city council could receive, and upon which they could act. Hence, their failure to make such certificate,

or the failure of the record of the proceedings of the city council to show that it was made, does not invalidate the proceedings of the city council, nor affect the validity of the tax levied in accordance with the result of the election.

5. *Same; levy of tax on real estate only.*—The grant of power to the city council by the terms of said act, the election having resulted in favor of aid to the railroad, "to levy such tax as may be necessary, upon the real and personal property in said city," is a grant of legislative, or governmental power, rather than corporate power; and if it be held to require the imposition of a tax on all the property in the city, both real and personal, without any discretionary power to discriminate between them, a tax levied on real estate alone would not be void : the omission or failure to tax personal property also, equally with real property, would be a mere error, or irregularity, for which a tax-payer, if thereby injured, would have an adequate remedy by *mandamus* before payment of the taxes assessed against him.

6. *Same ; amount of aid voted and taxed.*—The proposition submitted to the vote of the citizens, at the election held under said act, fairly construed, was, whether the city should issue its bonds in aid of the railroad "to an amount not exceeding one million dollars" ; and the election having resulted in favor of the proposition, the city council had a discretionary power as to the amount of bonds to be issued, not exceeding one million dollars, and might confine the issue to five hundred thousand dollars.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Mrs. Mary E. Winter, against the City Council of Montgomery, as a corporation, to recover moneys alleged to have been illegally exacted and collected by the defendant, and to have been paid by the plaintiff under protest and duress, and to avoid a sale of her property under execution, during the years 1868 to 1873, both inclusive ; and was commenced on the 18th November, 1873. The money sought to be recovered was paid, during those years respectively, as taxes assessed against real estate in the city of Montgomery belonging to the plaintiff, to pay the interest on certain bonds issued by the city of Montgomery, or the corporate authorities thereof, to aid in the construction of the South and North Alabama railroad from the city of Montgomery to Limekiln, now called Calera. The bonds were issued under authority supposed to be conferred by an act of the General Assembly of Alabama, entitled " An act to authorize the city of Montgomery to aid in building and equipping the South and North Alabama railroad from Montgomery to Limekiln," approved December 7th, 1866 ; and an election held in the city of Montgomery on the 17th December, 1866, under the provisions of said act, to ascertain the sense of the qualified voters of the city on the question whether aid should be extended by the city to the railroad, as authorized by said special statute.

The following are the provisions of said special statute :

*Sec.* 1.  " That an election shall be held in the city of Montgomery, on the third Monday in December, 1866, to take the

sense of the legal voters of said city on the propositions to
aid in building and equipping the South and North Ala-
bama railroad from Montgomery to Limekiln, upon the
terms agreed upon, on the 5th day of December, 1866,
between the directors of said railroad and the city council
of Montgomery ; and if, from any cause, said election should
not be held on said day, then the same shall be held on a
day to be appointed by the mayor of said city, not more
than thirty days from the approval of this act." *Sec.* 2.
" That all the qualified voters of the city of Montgomery
shall be entitled to vote at said election ; the voting shall be
by ballot : those who vote in favor of the propositions, must
write or print on their ballots the word ' *Aid* ' ; and those
opposed to the propositions, the words ' *No Aid.*' " *Sec.* 3.
" That the result of said election shall be certified by the
managers of said election, who shall be appointed by the
mayor of said city, to the city council of Montgomery ; and
the same shall be entered upon the journal or minutes of
said city council." *Sec.* 4. " That if a majority of the
votes polled at said election be in favor of said propositions
of the city council of Montgomery and the board of directors
of the said railroad company (?), be, and they are hereby,
fully authorized and empowered to carry into effect all of
said propositions." *Sec.* 5. " That, in the event aforesaid,
the city council of Montgomery may issue bonds for one
million of dollars, in such sums, and to run for such length
of time, not exceeding eight *per-centum per annum,* as the
said city council may deem proper ; and may levy such
tax as may be necessary, upon the real and personal prop-
erty in said city, to pay the interest and principal of said
bonds; *provided,* that the tax levied under the authority of
this act, in any one year, shall not exceed two *per-centum* on
the value of the property taxed, nor five *per-centum* on
incomes." *Sec.* 6. " That if said bonds are issued, as pro-
vided in this act, the holders of said bonds shall have
speedy process by *mandamus* to compel the levy and collec-
tion of the tax to pay the interest and the principal of said
bonds, as the same may become due ; and in the event of
the dissolution of the city council of Montgomery, any one
or more of the holders of said bonds, upon giving thirty
days' notice, by advertisement in *the same* (?) newspaper
published in said city, may hold an election, for five trus-
tees to levy and collect said tax ; at which election, each bond-
holder shall be entitled to one vote ; and the trustees thus
elected shall have all power hereby given to the city council
of Montgomery to levy and collect said tax, and pay the
principal and interest of said bonds ; and any vacancy in

such board of trustees may be filled by elections held as hereinbefore provided." *Sec.* 7. "That the city council of Montgomery, in levying the tax to pay the principal or interest of said bonds, be, and they are hereby, authorized. to make a levy in each year for an aggregate sum, more than the amount required to meet the principal and interest falling due in any such year, and may remit, in whole or in part, the tax on the homesteads of poor people; *provided,* the aggregate amount remitted shall not exceed ten *per-centum* on the whole amount of the levy; *and provided further,* that no tax shall be remitted in any one year, until ample provision has been made for the payment of the principal and interest falling due in such year."—Session Acts 1866–7, pp. 144–46.

The propositions agreed on by the board of directors of the railroad company, and concurred in by the city council, which are referred to in said statute as "the terms agreed upon, on the 5th day of December, 1866, between the directors of said railroad and the city council of Montgomery," as set out in the mayor's proclamation for the holding of the election, and copied in the transcript, were as follows : " 1. That a contracting company be formed, under the auspices of the railroad company, composed of men who have the confidence and approval of both the city council and the directory of the railroad; and that this contracting company shall make a contract with the said railroad company to build and equip its road from Montgomery to Limekiln, within a specified time, under and in accordance with the directions of the engineer of said railroad company, provided the city council, or the citizens of Montgomery, will furnish the necessary means. 2. That the South and North Alabama Railroad Company agree with the said contracting company to issue its stock to the contracting company, in payment for the work done by said contracting company in building and equipping said road, at the expiration of the time so specified for the completion of said road from Montgomery to Limekiln, for a sum that will bear the same proportion to the cost of the road from Montgomery to Limekiln, according to the engineer's estimate, which the then existing stock and liabilities of the railroad company bear to the other assets of the railroad company ; this proportion, as well as the amount of stock to be issued, to be determined by referees, with power to call in an umpire; the contracting company to retain the possession of the road from Montgomery to Limekiln, until the stock is issued and delivered, or offered to be issued and delivered to them, upon or after the expiration of the time appointed for the completion of the said road. 3. That the South and North

Alabama Railroad Company agree with the said city council, with such sureties as will be satisfactory to them, to save harmless the road from Montgomery to Limekiln from any excess there may be of the now existing debts of the said railroad company, over and above the value of the work already done by it, and of its property south of Limekiln ; which agreement shall contain an express provision, to the effect that such agreement of (?) guaranty shall become void and of no effect, if any future board of directors, or the stockholders, shall undertake in any way to fix or contrive any adjustment of the now existing debt or liability of the said railroad company, without the consent of the persons bound by said agreement, or their legal representatives respectively ; and to indorse the city bonds for one million dollars, hereinafter referred to. 4. That the city council issue bonds, to the amount of one million dollars, to the contracting company. 5. That the contracting company give its obligations to the city council, with satisfactory securities, conditioned that the bonds shall not be disposed of at less than an agreed discount, and for the faithful and judicious application of the proceeds to the building of the road from Montgomery to Limekiln, and to transfer to the city council the stock received from the railroad company ; the whole of the stock to be transferred, if the city council furnish all the money to build the road ; and if it does not furnish all the money, then to transfer an amount of the stock which shall bear the same proportion to the whole amount received, as the money furnished by the city council bears to the costs of the road. 6. The contracting company [is] to have the profits made by running the road, until the time agreed on for its completion, for their labor in building the road, and to have the right in the meantime, with the consent of the railroad company, to mortgage the road from Montgomery to Limekiln, to raise funds to complete it ; the amount of said mortgage not to exceed the difference between the engineer's estimate of the costs of completing the building and equipping said road, and the amount realized from the one million of bonds furnished by the city, should other resources fail."

The resolutions of the city council, adopting or ratifying these propositions, were also set out in the mayor's proclamation as having been passed on the 5th December, 1866, and in these words : "*Resolved,* that the city council of Montgomery concur in the resolutions submitted by the board of directors of the South and North Alabama Railroad Company. *Resolved,* that the mayor and three aldermen be appointed a committee, to act in conjunction with a

committee of the directors, to obtain the necessary legislative sanction to carry out the purposes of said resolutions. *Resolved*, that if the legislature shall empower the city council to issue its bonds in aid of said road, before the aforesaid bonds shall be issued, the question shall be submitted to a vote of the qualified voters of the city; and if a majority of those voting shall vote to grant the aid, then the city council shall proceed to issue the bonds, on such time, not exceeding thirty years, and at such rate of interest, not exceeding eight, as the city council shall elect." The record does not show that the managers of the election made any certificate to the city council, as to the result; nor does it set out the proceedings of the council in ascertaining the result, or in the assessment and levy of the tax, except so far they appear from the averments of the complaint in reference to their invalidity. Bonds were issued to the amount of $500,-000, and one of them was made an exhibit to the complaint.

The complaint contained the common count for money had and received by defendant for the use of the plaintiff, and several special counts, each of which alleged, in substance, that the money sued for was exacted and collected by the defendant, as taxes assessed against the plaintiff's real estate in the city of Montgomery, under authority supposed to be conferred by the special statute above set out, and of the election held under its provisions, and was paid by the plaintiff under protest and duress, and to avoid a levy and sale of her property; and asserted the invalidity and illegality of the tax, on the following grounds: 1st, because the statute was void for uncertainity, in that it did not set out at length, or in substance, the propositions agreed on between the city council and the directors of the railroad, on which the sense of the qualified voters was to be ascertained by the election; 2d, because the result of the election was not certified to the city council by the managers, as required by the statute; 3d, because the tax was assessed only upon the real estate in the city, to the exclusion of the personal property; 4th, because bonds were issued to the amount of $500,000 only, instead of $1,000,000. The court sustained demurrers to each of these special counts, and the trial was had on the general issue pleaded to the common count. The rulings on the demurrers are now assigned as error.

WINTER & WINTER, for appellant.—The special statute, under which the tax was assessed, is void for uncertainty. The agreement between the city council and the railroad company, or the propositions upon which the sense of the

citizens was to be ascertained by an election, should have
been set out in the statute, either at length or in substance,
or should have been identified with reasonable certainty.
But the statute neither states the substance of the proposi-
tions, nor furnishes a clue to their character or identity, thus
affording, by their omission, opportunity for mistakes, or
fraudulent changes. As matter of fact, there was no agree-
ment at that time between the contracting parties, the reso-
lutions of the city council making a material change in the
propositions submitted by the railroad company, in regard
to the rate of interest on the bonds. A statute should cer-
tainly contain everything that is essential to show the
legislative meaning and intention, with as much certainty
and definiteness as a judgment, deed, or other written instru-
ment.—*Dickerson v. Walker*, 1 Ala. 49; *Draughn v. Bank*,
1 Stew. 66; *Bank v. Strong*, 1 Stew. & P. 187; *Webster v. Ela*,
5 N. H. 540; Broom's Legal Maxims, 566; *Goodright v. Rich-
ardson*, 3 T. R. 463; Chitty on Contracts, 71, § 72. The city
council had no authority to assess the tax, because the
managers of the election, who were charged with the duty of
ascertaining and certifying the result thereof, never certified
said result to said city council, and no such certificate appears,
or was ever spread on the minutes of the city council.—*Col-
oma v. Eaves*, 2 Otto, 485. The assessments were void, also,
because the tax was imposed on the real estate only, to the
exclusion of the personalty. The statute gave the city
council no discretionary power to discriminate between the
two kinds of property, as in some of the cases cited for the
appellee; and no question of discrimination or exemption
was submitted to the people, or voted on by them. The
words of the statute are mandatory, and the tax is void, not
for the excess only, but absolutely and entirely.—Cooley's
Const. Lim. §§ 520–21; *Dean v. Michigan*, 16 Mich. 12;
Cooley on Taxation, 297; *Oakley v. Mayor*, 1 La. 1; *Tarver
v. Commissioners*, 17 Ala. 527; 9 Porter, 390; 21 Pick. 67;
*Corbett v. Bradley*, 7 Nev. 108; 28 Ala. 28. The assessments
were unauthorized and void, also, for the further reason,
that the bonds were issued for only $500,000, while the
amount specified in the statute, and in the propositions
which were voted on, was $1,000,000. This was a material
change in the contract, and was made without any authority.
The amount stipulated and voted was definite and fixed, and
may have been intended to secure a controlling influence
over the work, and thus direct or shape the policy of the
road; results which could not have been effected by the
smaller amount.—*Bell v. Railroad Company*, 4 Wallace, 598.
When the mode of contracting by a corporation is specially

[Winter v. The City Council of Montgomery.]

and plainly prescribed, that mode must be pursued, or the contract will be void.—Dillon's Mun. Corp. §§ 373, 388; Angell & Ames on Corp. § 253; *Aspinwall v. Davies County,* 22 Howard, 364; *Head v. Prov. Insurance Co.,* 2 Cranch, 127; *White v. New Orleans,* 15 La. Ann. 667; *U. S. Bank v. Dandridge,* 12 Wheaton, 64; *Marsh v. Fulton,* 10 Wallace, 676; *Thomas v. Richmond,* 12 Wallace, 349; *Donovan v. New York,* 33 N. Y. 291. As to the right to recover back, by action, money paid as taxes illegally exacted and collected, see *Town Council v. Burnett,* 34 Ala. 407; *Knox v. Abercrombie,* 11 Ala. 997; *Crutchfield v. Wood,* 16 Ala. 704.

ELMORE & GUNTER, *contra.*—Money paid upon an illegal tax, not under ignorance or mistake of facts, but under ignorance or mistake of law, and under the apprehension of an impending distress warrant, or under threats to use legal remedies to collect it, can not be recovered back.—*Baltimore v. Lefferman,* 4 Gill, 425; *Morris v. Baltimore,* 5 Gill, 244; *Taylor v. Board of Health,* 31 Penn. St. 73; *Elston v. Chicago,* 40 Illinois, 514; *Richmond v. Judah,* 5 Leigh, 305; *Christy's Heirs v. St. Louis,* 20 Mo. 143; *Smith v. Readfield,* 27 Maine, 145; *Elliott v. Swartwout,* 10 Peters, 350; *Robinson v. City Council,* 2 Rich. 317; *Smith v. Hutchins,* 8 Rich. 260. To enable the plaintiff to recover in this suit, she must show that there was no authority to levy the tax, and that the payment was made on compulsion, to prevent the immediate seizure of goods, or the arrest of the person.—2 Dillon's Mun. Corp. § 751. None of the objections specified in the complaint show the invalidity of the tax, or of the statute under which it was levied. The right to levy the tax, and to issue the bonds, depended on the actual result of the election, and not on the certificate of the managers as to the result. It was the duty of the city council to ascertain the result; and the failure of the managers to make the proper certificate, whether their default was accidental, negligent, or willful, could not relieve them from this duty, nor from taking the necessary steps to levy and collect the tax, if the election resulted in favor of it; and the complaint does not allege that the result of the election was against the proposed aid, nor that the city council did not ascertain the result. Neither does the complaint specify in what particulars the propositions submitted to the popular vote were changed or modified by the city council; and the propositions and resolutions, as set out in the exhibits, show a substantial compliance on all material points. Under the provisions of the statute, the city council had a discretionary power to levy a tax on all the property in the city, real and

[Winter v. The City Council of Montgomery.]

personal, or to confine it to the real estate alone.—*Oakley v. Mayor*, 1 La. 1; *Municipality v. Duncan*, 1 La. Ann. 182; *Primm v. Belleville*, 59 Ill. 142. The omission to tax personal property was a mere irregularity, or defect or mistake in the mode of assessment, and does not vitiate the whole tax. 2 Dillon's Mun. Corp. § 616, notes; *Page v. St. Louis*, 20 Mo. 136; *People v. McCreery*, 34 Cal. 43; *Hale v. Kenosha*, 29 Wisc. 599. The plaintiff can not complain of the omission to tax personal property, without showing that she was thereby injured; and if injured, her remedy was by *mandamus* to compel an assessment of the personal property, or by bill in equity to enjoin the collection of the excess. *Dunham v. Chicago*, 55 Illinois, 357; *Schofield v. Walker*, 22 Illinois, 66; 20 Mo. 136.

BRICKELL, C. J.—This case involves two questions: 1st, whether the city council had authority to levy and assess the taxes which were paid by the appellant; 2d, whether the taxes were paid voluntarily, or under compulsion, or that which the law deems the equivalent of compulsion. An action for money had and received will lie against a municipal corporation, which may have illegally exacted and received it as taxes. The action can not, however, be supported, unless there is the concurrence and co-existence of two conditions: 1st, the absence of authority for the imposition of the tax, rendering its assessment, and all proceedings taken for its collection, not merely *irregular*, but absolutely *void*; 2d, the payment of it, not reluctantly—not under protest only; not with mere notice that the validity of the tax is disputed, and the duty and liability to pay denied—but under compulsion, or duress, to avoid arrest, or to prevent the seizure of goods.—Cooley on Taxation, 565; Dillon Mun. Cor. § 751; *Town Council of Cahaba v. Burnett*, 34 Ala. 600. We shall consider the first question only—the validity or invalidity of the levy and assessment of the taxes.

An act of the General Assembly was approved December 7, 1866 (Pamph. Acts, 1866-7, pp. 144-6), entitled "An act to authorize the city of Montgomery to aid in building and equipping the South and North Alabama railroad, from Montgomery to Limekiln." The first section, referring to propositions and terms which, on the 5th December, 1866, had been agreed upon by the city council and the board of directors of the railroad company, for the aid of the city in building and equipping the road from the city to Limekiln, directed that, on the third Monday in December, 1866, an election should be held, to take the sense of the legal voters on these propositions. The second section directed, that the

voting at the election should be by ballot; the voter favoring the propositions writing or printing the word '*Aid*' on his ballot, and the voter differing writing or printing on his ballot the words '*No Aid*'. The third section required the mayor to appoint managers of the election, who were to certify to him its result; which he was to cause to be entered on the journal or minutes of the city council. The fourth section authorized the city council, and the board of directors of the railroad company, *to carry into effect all of said propositions*, if they were at the election favored by a majority of the votes. The fifth section empowered the city council to issue the bonds of the city, for one million of dollars, *in such sums, and to run for such length of time, not exceeding thirty years, and to bear such rate of interest, not exceeding eight per-centum per annum, as the said city council may deem proper.* It authorized the council *to levy such tax as may be necessary, upon the real and personal property in said city*, to pay the principal and interest of said bonds; *Provided*, that the tax should not, in any one year, *exceed two per-centum on the value of the property taxed, nor five per-cent. on incomes*. The sixth section entitled the holders of the bonds to speedy process, by *mandamus*, to compel the levy and collection of the tax to pay the interest and principal of the bonds, as the same became due; and in the event of the dissolution of the city council, the bondholders were empowered to elect trustees, who were clothed with the full authority to levy and collect taxes for the payment of the principal and interest of said bonds. The seventh section authorized the city council, in levying the tax, in each year to levy for an aggregate sum, greater than was required to pay interest and principal of the bonds falling due in that year, and to remit, in whole or in part, the tax on the homesteads of the poor.

Under this act, an election was held, of which the mayor gave notice, having appointed managers of each precinct, or voting-place in the city, and having made publication of the terms and propositions which had been agreed upon by the board of directors of the railroad company and the city council. The election resulted in favor of the city aiding the railroad company; but it is averred, that the managers did not certify its result to the mayor, as directed in the third section of the act. The propositions agreed upon between the directors of the railroad company and the city council, so far as material, were, that the city council should issue the bonds of the city, to a company contracting to build and equip the road, to the amount of one million of dollars; the company to give the city council an obligation, with sat-

isfactory securities, not to dispose of the bonds at less than an agreed rate of discount, and for the faithful application of the proceeds of the bonds to the building of the road from Montgomery to Limekiln; and to transfer to the city stock in the railroad company, which they were to receive on the completion of the road. "*The whole of this stock to be transferred, if the city council furnish all the money necessary to build the road. It it does not furnish all the money, then to transfer an amount of the stock which shall bear the same proportion to the amount received, as the money furnished by the city council bears to the cost of the road.*"

The city council issued the bonds of the city, to a company contracting to build and equip the road, to the amount of five hundred thousand dollars, having thirty years to run, payable in the city of New York, bearing eight per-cent. interest; stipulating that they should be sold at not less than ninety cents, and that the contracting company should transfer to the city four hundred and fifty thousand dollars of the stock of the railroad company. An obligation, with sureties, was given by the contracting company, to the city, with conditions as specified in the propositions. The taxes paid by the appellant were levied and assessed for the payment of the interest on the bonds so issued.

It is insisted by the appellant that the act under which the taxes were levied and assessed is void, because it does not set out, in *hæc verba*, or in substance, the propositions referred to in its first section, which had been agreed upon by the board of directors of the railroad company and the city council, upon which the sense of the voters of the city was to be taken, through an election. There was, at the time the act was passed by the General Assembly, no provision of the constitution, which could be construed as requiring that these propositions should have been embodied in the act; no mode of legislative procedure prescribed, which was offended by their omission. To justify a court in pronouncing a statute void, it must be apparent that it is an exercise of powers not legislative—of power committed to one or more of the other departments of the government, or that it is violative of some provision of the constitution, State or Federal. Whether the policy of the statute is sound—whether it will promote the public good —whether it is in harmony with natural right, or with abstract justice, are not judicial questions.—*Dorman v. State*, 34 Ala. 216. Nor is it a question for the courts, whether, in the expression of its will, the General Assembly has observed a care and caution, corresponding to the importance of the subject before them, or the magnitude of the interests to be

affected. The duty of the court is the ascertainment of the legislative intent, looking alone to the words of the enactment, when these are clear, intelligible, and unambiguous; and, when necessary, considering all the circumstances attending the enactment, and the ends it was intended to accomplish. It rested wholly in legislative discretion, whether these propositions should be embodied in the act, or to determine what reference to them was necessary. There is no uncertainty in the act; there could be no doubt or difficulty in ascertaining what were the propositions; and certainly the appellant had none in ascertaining and identifying them.

The second point of contention is, that, as the managers of the election did not, as directed by the third section of the act, certify its result to the mayor, the issue of the bonds of the city was without authority, and the levy and assessment of taxes, to pay the interest on them, void. The argument, as we understand it, is, that there was no authority for the issue of the bonds of the city, unless a majority of the qualified voters, at the election, had voted to aid the railroad company; that the managers of the election, appointed by the mayor, were by the act constituted a special tribunal, clothed with the exclusive power of ascertaining the result of the election, and could only manifest their exercise of the power, and the result of the election, by a certificate to the mayor, which must have been entered on the journal or minutes of the city council. It is obviously true, that the city council must, before the bonds were issued, have ascertained that the condition existed upon which their authority to issue them depended. But is it true, the statute devolved on the managers of the election the exclusive power, or any power, of determining the result of the election? The only duty, to which they were specially appointed by the statute, is certifying to the mayor the result after the election. But they had also the duties ordinarily pertaining to managers of an election—the supervision of the election; the receiving of votes; the keeping of poll-lists; the counting of the ballots, ascertaining and declaring the number of votes cast, and how many favored, and how many opposed, the proposed aid to the railroad. These are mere ministerial duties, and when performed, every official function of the managers would have terminated. If the certificate they were directed to make had been made, it would have been evidence on which the mayor and council could have acted; and of the results of the election would have been *prima facie* evidence, whenever it was necessary to prove them. But we do not find in the act any indication of a purpose

[Winter v. The City Council of Montgomery.]

that the validity of the election shall depend on their making the certificate, or that it shall be the exclusive evidence of its results. The mayor and city council were charged with the duty of ascertaining whether a majority of the voters had in fact declared that aid should be by the city extended to the railroad company, on the terms proposed. In the event a majority had so declared, they only had duties to perform; or, in the event had not so declared, it was their duty not to proceed in the execution of the propositions, and to resist any effort which could have been made to compel them into execution. The certificate of the managers would have been evidence, on which they could have acted, if it was unquestioned. But it was not conclusive, or exclusive evidence. Inquiry into, and the determination of the fact, on which their official responsibility depended, was the duty of the mayor and council, from which no *laches* on the part of the managers of the election could relieve them. The result of the election, not the evidence of it coming from any particular source, must have controlled their official action. If the managers made no certificate of the result; or, if they did, and error in it was apprehended; examination of the ballots and poll–lists, and a computation of the votes, or the resort to any satisfactory evidence to ascertain the result of the election, was the duty of the mayor and council. When they ascertained that a majority of the votes had been cast in favor of the propositions, the issue of the bonds of the city was not only within their province, but a duty to which they could have been compelled.

It is insisted that the tax was illegal and void, because assessed only on the real estate of the city, to the exemption of personal property. The grant to the city council is of power " *to levy such tax as may be necessary, upon the real and personal property in said city,*" &c. It is a grant of legislative, governmental, rather than of corporate power. Whether the city council are, by the terms of the grant, compelled to levy upon both species of property, and to the same rate upon each—whether they are without discretion in the exercise of the power, and may not apportion the tax, so that the species of property deriving the larger benefits from the building and equipping of the railroad, or which can best bear it, should bear the burdens of the tax, we shall not consider. If it is conceded to the appellant, that the taxes should have been levied and assessed alike, and in the same proportion, on real and personal property, the omission of personal property is a mere error, an irregularity, for the correction of which the appellant had appropriate and adequate remedies, before making payment of the tax. The

error does not render the assessment void; it does not de-
prive the city of a just claim to so much of the tax on the
real estate as it ought in good · conscience to have borne.
Errors, omissions, misconstruction of powers, on the part of
the officers of a municipal corporation, in the levy of taxes,
or in their collection, must be of frequent occurrence. It
would be most dangerous to hold, when *the question arises
collaterally*, that they vitiate the entire levy,—as well that
which is certainly within, as that which may be without the
power of the corporation. The mistakes of its officers might
work the destruction of the corporation, and the deprivation
of the local government it was established to administer.
Through a period of five years, the appellant paid the taxes
now sought to be regained. They passed into the city
treasury, and were disbursed in payment of the interest on
the city bonds. The times for the levy and assessment of
taxes on the real and personal property within the city, for
those years, have passed. There can be no levy and assess-
ment of them now; and if the appellant can recover the
taxes paid by her, the result would be, that she would escape
all taxation; not only that which ought not to have been
paid, but that which ought to have been. The same right
of recovery would pertain to every other tax-payer; and
the corporation would be paralyzed, incapable of continued
existence, and the exercise of its powers of government for
the good of the city. If the tax should have been levied
alike on personal and real property—if the city council was
without discretion to impose it on the one only—and injury
resulted to the appellant, by *mandamus* she could have com-
pelled the assessment of both species of property; and this
was her appropriate remedy. From it she would have de-
rived the full measure of right to which she is entitled, and
no serious injury could have resulted to the city.—2 Dill.
Mun. Corp., § 616, and note. ·

We do not discover that the city council varied the prop-
ositions which were submitted to, and approved by the
voters, at the election. The proposition was, when fairly
construed, that the city should extend aid to the railroad
company, by the issue of its bonds, to an amount not exceed-
ing one million of dollars, which were to be employed in
building and equipping the road. It was not pecuniary gain,
nor any of the advantages which would accrue to an indi-
vidual from membership in the railroad company, that
formed a motive or inducement for clothing the city with
the power to aid in the construction of the road. The bene-
fits which would result to the commerce and industry of the
city, the increased facilities of access to it, were the pur-

poses for which the power was conferred. If these could be secured without involving the city in a debt of one million of dollars, it was not only within the power, but it was the duty of the city council, to secure them for the least practicable sum. The power to create the larger included the power to create the lesser debt. *Omne majus continet in se minus.*

There is no room for pronouncing the levy and assessment of the taxes paid by the appellant *void*; and consequently this action can not be maintained.

The judgment is affirmed.