# The State, *ex rel.* Stow *v.* City Council of Montgomery.

### *Bill in Equity, for Injunction against Municipal Tax.*

1. *Municipal bonds in aid of railroad; injunction of tax to pay interest on.*—The corporate authorities of the city of Montgomery having been authorized, by special statute, to submit to a vote of the citizens the question of granting aid to the South and North Alabama Railroad Company, on the terms agreed on between the said corporate authorities and the directors of the railroad company, and to issue city bonds in aid of the railroad, if the election resulted in favor of subscription; the issue and negotiation of the city bonds might be enjoined, at the suit of individual citizens and tax-payers, on the grounds that a majority of those voting at the election did not in fact vote in favor of subscription, and that the propositions voted on were afterwards changed, to the detriment of the city, by agreement between the city authorities and the railroad directors, "if these facts had been shown at the proper time;" but, the bonds having been issued, being regular on their face, negotiable in form, and having passed into the hands of third persons, as purchasers for value, who are not charged with knowledge or notice of any irregularity in their issue, as against them such irregularities avail nothing, and the tax-payers can not enjoin the collection of a municipal tax levied to pay the interest on them.

2. *Burden of proof as to notice.*—As against the holders of negotiable municipal bonds, an averment of notice of irregularities in their issue which would invalidate them, though necessary in a bill which seeks to enjoin their collection, is negative in its character, and does not impose on the complainants the *onus* of proving notice.

3. *Special statute authorizing city of Montgomery, on vote of citizens, to aid in construction of South and North Alabama railroad; certificate of managers, as to result of election; difference between propositions voted on*

[The State, ex rel. Stow v. City Council of Montgomery.]

*and those afterwards accepted; levy of tax on real estate only.*—As to the construction of the act approved December 7th, 1866, entitled " An act to authorize the city of Montgomery to aid in building and equipping the South and North Alabama railroad from Montgomery to Limekiln " (Sess. Acts 1866-7, pp. 144–46); the election held under said act; the conclusiveness of the certificate of the managers, as to the result of that election; the alleged difference between the propositions voted on and those afterwards accepted by the city authorities, and the validity of a tax levied on real estate only to pay the interest on the bonds issued,— these questions were decided adversely to the present appellants, in the case of *Winter v. City Council of Montgomery* (65 Ala. 403–17), which see.

4.   *Appeal bond.*—When an appeal bond, in a chancery case, is made payable to the register, instead of the appellee, a judgment for costs can not be rendered against the sureties, on an affirmance, the only remedy against them being by action on the bond.

5.   *Costs against relators.*—When a bill in equity is filed by the attorney-general in the name of the State, on the relation of certain private citizens and tax-payers, and for their benefit, costs may be adjudged against the relators, on a dismissal of the bill.


APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JNO. A. FOSTER.

The bill in this case was filed on the 29th April, 1874, by Benj. Gardner, as attorney-general, in the name of the State, on the relation of J. P. Stow and others, citizens, tax-payers, and owners of real estate in the city of Montgomery, against the corporate authorities of said city; and sought to enjoin the collection of a special tax of one per-cent. on the assessed value of all taxable real property in the city of Montgomery, which had been levied by the corporate authorities of the city, for the year 1873, to pay the interest on certain bonds of the city issued in aid of the South and North Alabama Railroad Company. The bonds were issued under authority of the special act approved December 7th, 1866, entitled "An act to authorize the city of Montgomery to aid in building and equipping the South and North Alabama railroad from Montgomery to Limekiln" (Sess. Acts 1866–7, pp. 144–46), and an election held in the city under the provisions of said act; and were in the following form:

"State of Alabama,   }   Know all men by these presents, Montgomery County. } that the City of Montgomery, in the State of Alabama, acknowledges to owe E. C. Hannon & Co., or the bearer hereof, one thousand dollars, on the first day of July, 1888, at the agency of said city of Montgomery in the city of New York, with interest thereon at the rate of eight per-cent. *per annum*, payable semi-annually at the agency of said city of Montgomery in the city of New York, on the first days of January and July in each year, upon the presentation and surrender of the coupons hereto attached, as they severally become due; this bond being one of a series of five hundred

bonds, of one thousand dollars each, numbered from one to five hundred inclusive, issued by the said City Council of Montgomery, under the authority of an ordinance adopted by said City Council on the 9th April, 1868, and in pursuance of an act of the General Assembly of the State of Alabama, approved December 7th, 1866, and entitled 'An act to authorize the city of Montgomery to aid in building and equipping the South and North Alabama railroad from Montgomery to Limekiln;' and is convertible into the stock of the South and North Alabama railroad, at par, at the option of the holder thereof. In witness whereof, the Mayor and Treasurer of the said City of Montgomery have signed this bond, and caused the same to be duly registered and numbered in the office of the Clerk of the said city, and the seal of the said City of Montgomery to be hereto affixed, this, the first day of July, 1868." (Signed by the mayor and treasurer, and marked, registered and numbered by the clerk.)

The bill assailed the constitutionality of this special law, on the ground that its purpose and effect was to take private property, for the use of a private corporation, without requiring just compensation to be made to the owners ; and because the propositions said to have been agreed on between the corporate authorities and the directors of the railroad company, and which were to be submitted to a vote of the citizens, were not set out in the act, nor referred to as being matter of record anywhere ; and because such propositions were not in fact in existence.   It assailed, also, the validity of the election, on the ground, as stated, that the mayor's proclamation "is void for uncertainty, and also on account of its discrimination, and was both delusive and fraudulent ;" alleged that, as matter of fact, a majority of the votes cast at the election, by the persons authorized to vote, was not cast in favor of the subscription to the railroad ; and that no proper certificate of the result of the election was ever returned by the managers thereof, or entered on the minutes of the city council ; and insisted that, on these grounds, the subsequent proceedings of the corporate authorities of the city were not authorized by the election.   It assailed, also, the subsequent proceedings of the corporate authorities, relating to the issue and transfer of the bonds, on the following (with other) grounds : 1. That the corporate authorities entered into an agreement with E. C. Hannon & Co., a company which had contracted with the railroad company for the building of its road from Montgomery to Limekiln, by which they obligated themselves to issue and deliver to said Hannon & Co., and did afterwards issue and deliver, the bonds of the city to the amount of $500,000, at the price of $450,000, for which they received the stock of the railroad company at par, when it was worth

only fifteen cents on the dollar. 2. That this was done before any portion of the railroad had been built, when its assets were inconsiderable, and its stock almost worthless; whereas said special act contemplated and required that the road should be first built as far as Limekiln, when its assets and stock would have greatly increased in value. 3. That bonds were issued only to the amount of $500,000, whereas the said special act contemplated and authorized bonds to the amount of $1,000,000, which would have given the city a controlling interest in the railroad; and that was the amount of subscription on which the citizens had voted at the election. 4. That the terms of the contract under which the bonds were issued and delivered to said Hannon & Co. were materially different from the terms stated in the propositions submitted to the vote of the citizens at the election. 5. That the bonds were made payable at the agency of the city in New York, when in fact the city had no agency there, and the act did not authorize them to be made payable extra-territorially. It was alleged, also, in an amended bill filed November 9, 1875, that said Hannon & Co., or their assigns, Samuel Tate and his associates, "sold and delivered said bonds, but without indorsement, to the business firm of Josiah Morris & Co. in the city of Montgomery, for $450,000, in current money, and said bonds are now held by divers persons, whose names are unknown to informants, except P. W. Donaldson" and several others, who were brought in as defendants to the amended bill. The bill assailed the validity of the tax sought to be enjoined, on the ground that it was excessive, and was intended to raise a surplus, over and above the amount necessary to pay the interest on the bonds, to be used and applied to other purposes; and because it was assessed and levied upon real estate only, instead of both real and personal property. The prayer of the bill was, that the bonds might be declared void, the collection of the tax perpetually enjoined, and for other and further relief under the general prayer.

An answer to the bill was filed by the corporate authorities of the city of Montgomery, in their corporate name, insisting on the constitutionality of said special statute, the legality of the election held under it, the regularity of the subsequent proceedings on the part of the city authorities, the validity of the bonds; and of the ordinance levying a tax to pay the interest on them; and demurring to the bill for want of equity, on several grounds specifically assigned, and, among them, because it was not averred in the bill that the holders of the bonds had any knowledge or notice of the alleged irregularities preceding and attending their issue. A decree *pro confesso* was taken against the several bondholders who were made defendants to the bill.

[The State, ex rel. Stow v. City Council of Montgomery.]

A temporary injunction was granted, on the filing of the bill, by one of the circuit judges of the State, without requiring bond or affidavit from the relators; and Chancellor AUSTILL refused to dissolve the injunction, on motion, after answer filed. On final hearing, on pleadings and proof, Chancellor FOSTER, without passing on the demurrers, dissolved the injunction, and dismissed the bill, at the costs of the relators. An appeal from this decree was sued out in the name of "the State of Alabama, ex rel. J. P. Stow et al.," and each part of the decree was here assigned as error.

A bond for the costs of the appeal was taken by the register, payable to himself officially, "his heirs, executors and administrators," the condition of which was in these words: "Now, if the complainant aforesaid shall prosecute the said appeal to effect, and shall satisfy such decree as the Supreme Court may render in the premises, then this obligation to be null and void," &c. When the opinion of this court was first delivered, a judgment of affirmance was entered in the usual form, the costs of the appeal being adjudged against the obligors on the appeal bond. On application by the appellant's counsel, for a modification of this judgment, on the ground that the relators were not liable for costs, and that a summary judgment for the costs could not be rendered against the obligors on the bond, the judgment was amended, and rendered in accordance with the opinion as it now appears.

WATTS & SONS, and J. S. WINTER, for appellants.

W. A. GUNTER, contra.

STONE, J.—We have not been able to find any order of the court, by which the amended bill found in the record was allowed to be filed; but in what we have to say, we will treat the case as if the amended bill were a part of the record.

In the amended bill it is averred, "that a majority of the votes cast in said election, by those qualified to vote thereat, was not, in point of fact, cast in favor of the proposition to aid in building and equipping the said South and North Alabama railroad from Montgomery to Limekiln." In another place it is averred, that in the negotiations between the city council of Montgomery and the authorities of the railroad company, the former disregarded the agreement previously made, and secured to the city a smaller amount of the capital stock in the railroad company, than it was entitled to. If these facts exist, and had been shown at the proper time, they would have furnished a sufficient reason for enjoining the city authorities from issuing

[The State, ex rel. Stow v. City Council of Montgomery.]

and negotiating the city's bonds.—2 Daniel on Neg. Insts., §§ 1535–6.

The act of Dec. 7th, 1866 (Sess. Acts, 144), authorized the mayor of Montgomery to appoint commissioners to hold an election, and thus ascertain the sense of the qualified voters within the city, in the matter of rendering aid in the construction of the South and North Alabama railroad from Montgomery to Limekiln. The conduct of the election was confided to the commissioners thus to be appointed. When the favorable result of the election should be made known to the city council, then. that body, and the board of directors of the South and North Alabama railroad, were authorized and empowered to carry into effect the provisions of said act, and of the propositions which preceded it. And in the event the election resulted in favor of aid to the railroad, then the city council of Montgomery were authorized to issue bonds of the city to carry it into effect. The bonds were issued, the railroad built, and those bonds, according to the averments of the bill, have passed into the hand of outside holders. Now all these steps—the proposition, the election, the agreement with the railroad company, and the issue of the bonds—were confided to the city council of Montgomery; and, as we have said above, if that body were taking any step in violation or disregard of the provisions of the statute, then the tax-payers of the city, at any time before the bonds passed into the hands of *bona fide* holders, could have intervened, and, by injunction, arrested such illegal act before its consummation.

The question, however, becomes a very different one, when the bonds have passed into the hands of *bona fide* holders, or purchasers. As to them, these irregularities stand for nothing. Such purchasers are regarded as innocent holders, when without collusion, and without knowledge to the contrary, they purchase negotiable bonds put on the market, issued by the proper authority, and having on their face the marks of regularity. They are not required to institute an inquiry, whether the trusted officers have done their duty, or have conformed to the requirements, made, by the law, conditions precedent to the execution of the power. The presumption is in favor of official propriety. "When a corporation has power, under any circumstances, to issue negotiable securities, the *bona fide* holder has a right to presume they were issued under the circumstances which give the requisite authority; and they are no more liable to be impeached for any infirmity, in the hands of such a holder, than any other commercial paper."—2 Danl. Neg. Instr. § 1537; *Comm'rs of Knox Co. v. Aspinwall*, 21 How. U. S. 539; *Moran v. Comm'rs*, 2 Black, 722; *Gelpche v. Dubuque*, 1 Wall. 175; *Supervisors v. Schenck*, 5 Wall. 772;

*Mayor v. Lord*, 9 Wall. 409; *Merchants' Bank v. State Bank*, 10 Wall. 604.

This principle is decisive of the two questions stated above, if the alleged bonds have passed into the hands of *bona fide* holders. This rests on the self-evident proposition, that if the city is liable for the bonds, then it has the authority to raise the means for their payment by taxation.

The present bill does not, in terms, show that the bonds are in the hands of innocent, *bona fide* holders. It does show, however, that they have passed into third hands, and it does not, in any manner, deny that such third persons are *bona fide* holders for full value. It simply states the fact, without note or comment. Now, if such holders acquired the bonds by fair, legal purchase, without notice, or something to put them on inquiry as to such alleged irregularities, then their rights are not impaired thereby. Pleadings are to be construed most strongly against the pleader, and material averments omitted are thereby admitted. The averment under discussion is negative in its character; and, therefore, if the bill had averred that the present holders of the bonds were not purchasers for value, the *onus* of proving such negative averment would not, under our rulings, have rested with the complainants. Still the averment was necessary. Without it, the complainants showed no right to relief.—Sto. Eq. Pl. § 263; *Carroll v. Malone*, 28 Ala. 521.

Alll the other questions raised by this record are settled adversely to appellants, in *Winter v. City Council*, 65 Ala. 403.

There can be no judgment, however, against the sureties on the appeal bond. Being made expressly payable to the register, it is not a statutory bond; and, hence, if there be any recourse against the sureties, it must be sought in an action on the bond. *Brown v. Levins*, 6 Por. 414; *Curry v. Barclay*, 3 Ala. 484; *Tarver v. Nance*, 5 Ala. 712; *Hinson v. Preslar*, 27 Ala. 643.

This suit was brought in the interest, and for the benefit of the relators. Let the costs of appeal be taxed against them.

The decree of the chancellor is affirmed.