ELIZABETH S. ROBINSON, PLAINTIFF IN ERROR, vs. HENRY G. AIRD AS RECEIVER OF THE DIME SAVINGS BANK OF FLORIDA, A CORPORATION UNDER THE LAWS OF FLORIDA, DEFENDANT IN ERROR.

1. A count in a declaration alleging that a third person executed his certain promissory note payable to the order of defendant; that defendant endorsed and delivered said note to a certain bank whereby she promised to pay the bank $100 for attorneys' fees in the event the note was not paid at maturity, and was placed in the hands of an attorney for collection; that the note was not paid at maturity and had been placed in the hands of

an attorney for collection, does not show a liability for attorneys' fees on the part of defendant to the bank or to one claiming through it.

2. An ordinary endorsement of a note. does not carry with it an original obligation to pay attorneys' fees for collecting the note, and without notice of its dishonor the endorser will not be liable upon such endorsement for attorneys' fees stipulated in the face of the note to be paid by the maker.

3. To charge a party with notice of the dishonor of a bill or note because notice was given to another person as his agent, it must be shown that it was within the scope of the agent's authority to receive such notice.

4. Where the declaration in an action against an endorser alleges that due notice of the dishonor of the note sued upon was given defendant, and defendant's plea puts this allegation in issue, the burden of proof is upon the plaintiff to prove notice.

5. Depositors in savings banks organized under the laws of this State are creditors of the bank and have the same rights as depositors in other banks.

6. Section 2193 Revised Statutes is directed against certain transactions taking place after the commission of an act of insolvency by banks, or in contemplation thereof, made with a view to the preference of one creditor to another. Where a party owes the bank a note and also has a credit to his deposit account for deposits made while the bank is solvent and not in contemplation of its insolvency, and the bank officials and such party, after the bank becomes insolvent, enter the amount of the balance due such party on his deposit account as a credit on the note, the statute is not violated, and such credit may be pleaded as a payment on the note in an action brought to recover on such note by a receiver subsequently appointed.

7. Where a party indebted to a bank, after it becomes insolvent purchases from certain depositors their deposits in the bank and the amounts of such deposits so purchased are by the bank officials entered as credits on the debt owing by such party, such payments are invalid, under section 2193 Revised Statutes and will not be binding on a receiver subsequently appointed who sues to recover the debt owing by said party.

9. If the manager of a savings bank is also agent for A and collects money for A which he deposits in the bank, and subsequently, A draws upon his agent for the money and the bank recognizing its liability for the money so deposited, and in or-

der to pay same, with the consent of the manager, procures B, a debtor to the bank, to assume liability to A for the draft, agreeing to credit the debt due the bank by B with the amount paid by B in settlement of the debt, and B legally assumes such liability with the consent of A and the bank, payable at a future date, such transaction is not prohibited by section 2193 Revised Statutes unless it was entered into or made in contemplation of the bank's insolvency, or after the commission of an act of insolvency by it, with a view to prefer one creditor to another, and the fact that before the payment to A became due the bank became insolvent and a receiver was appointed, will not affect B's right to claim as a payment upon his debt to the bank, in an action thereon by the receiver, the amount so paid by him to A in pursuance of the arrangement.

Writ of Error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the Court.

*D. U. Fletcher* and *Wm. H. Harwick*, for Plaintiff in Error.

*J. C. Cooper*, for Defendant in Error.

CARTER, J.:

On February 4, 1895, defendant in error began an action of assumpsit against plaintiff in error in the Circuit Court of Duval county. There are four counts in the declaration, each containing allegations to the effect that on the      day of      , A. D. 1894, by a decree of the Circuit Court of Duval county in a cause wherein the Comptroller was complainant and the Dime Savings Bank, a corporation under the laws of Florida, was defendant, the plaintiff was appointed receiver of all the properties and assets of the bank, and authorized to

take possession of same and sue for and collect all outstanding indebtedness due it, and that in accordance with the decree, appointment and statutes in such cases made and provided plaintiff thereupon duly qualified as receiver and the bank transferred and delivered to him all of its properties, assets and accounts. The first count alleges that the assets of the bank so transferred and delivered to plaintiff included a certain promissory note dated July 10, 1893, made by defendant, whereby she promised to pay to the order of the bank $2,919.70 eighteen months after date, with interest at 10 per cent per annum after maturity; that by virtue of his appointment and the statute in such cases provided the amount of the note became payable to plaintiff in error; that being so liable defendant promised to pay the note to plaintiff, but did not pay same.

The second count alleges that the assets of the bank so transferred and delivered to plaintiff included a certain promissory note dated July 10, 1893, made by defendant, whereby she promised to pay to the bank or order $50 for attorneys' fees if said note was not paid at maturity and was placed in the hands of an attorney for collection; that the note was not paid at maturity and had been placed in the hands of an attorney for collection, whereby said sum of $50 became due and payable by defendant to the bank; that by virtue of his appointment and the statutes in such cases provided said amount became due and payable by defendant to plaintiff, and that being so liable she promised to pay said sum but did not pay same.

The third count alleges that the assets of the bank so transferred and delivered to plaintiff included a certain promissory note dated November 14, 1893, made by Roland Woodward, whereby he promised to pay de-

fendant $576.57 six months after date with interest at 10 per cent per annum after maturity, and defendant endorsed said note and delivered same to the bank; that the note was presented for payment and was dishonored, whereof defendant had due notice but did not pay same; that by virtue of his appointment and the statute in such cases provided the amount of said note became due and payable to plaintiff; that being so liable defendant promised to pay the note to plaintiff but did not pay same.

The fourth count alleges that the assets of the bank so transferred and delivered to plaintiff included a certain promissory note dated November 14, 1893, made by Roland Woodward and payable to the order of defendant, and by defendant endorsed and delivered to the bank, whereby defendant promised to pay said bank the sum of $100 for attorneys' fees in the event said note was not paid at maturity and was placed in the hands of an attorney for collection; that said note was not paid at maturity and same had been placd in the hands of an attorney for collection, whereby defendant became liable to said bank for said sum of $100; that by virtue of his appointment and the statute in such cases provided the said sum of $100 became due and payable by the defendant to plaintiff, and that being so liable defendant promised to pay said sum, but did not pay same.

The defendant demurred to the fourth count, the matters of law noted for argument being that the allegations fail to show that defendant had due notice of the nonpayment and dishonor of the note mentioned therein, and fail to show liability on the part of defendant to pay the alleged claim. This demurrer was overruled.

The defendant's pleas upon which plaintiff joined issue are as follows: No. 1 to 1st and 2nd counts. That before action and while said bank was solvent and before

plaintiff was appointed receiver of all the property and assets of the bank and was authorized to take possession of same and sue for and collect all outstanding indebtedness due the bank as alleged in the declaration at the request of the bank, the defendant discharged and satisfied plaintiff's claim before the same became due by payment to E. I. Robinson as treasurer of the bank.

No. 2 to 2nd count, that defendant never promised as alleged.

No. 3 to 3rd and 4th counts. That defendant was not duly notified that said note was presented for payment to the maker and was dishonored when the same became due.

No. 4 to 4th count. That defendant never promised as alleged.

On May 14, 1895, the cause was tried. The jury found for plaintiff on each count of the declaration, assessing damages on the first and second counts at $2,963.96, on the third and fourth at $724.23, making a total sum of $3,697.92, for which judgment was duly entered, after defendant's motion for a new trial was overruled. From the judgment entered this writ of error was taken.

I. The first assignment of error relates to the ruling upon the demurrer to the fourth count of the declaration. This count alleges that one Roland Woodward executed his promissory note payable to the order of the defendant, and that defendant endorsed and delivered said note to the bank whereby she promised to pay the bank $100 for attorneys' fees in the event the note was not paid at maturity and was placed in the hands of an attorney for collection. No facts are alleged showing defendant's liability, in any capacity other than as mere endorser. It is not alleged that she was a maker of the note.

or that by the terms of the note or the endorsement she assumed any liability beyond that assumed by an ordinary endoresment of a negotiable paper, *i. e.*, to do that which the maker of the paper was by its terms obliged to do, upon the maker's default and notice to the endorser of such default. An ordinary endorsement does not carry with it an original obligation to pay attorneys' fees, and without notice of the dishonor of the note defendant would not be liable upon such an endorsement for attorneys' fees stipulated in the face of the note to be paid by the maker. The count under consideration fails to state a cause of action and the court below erred in overruling the demurrer.

II. Various other rulings are assigned as error, but only two others will be discussed, *viz*: the ruling upon the motion for a new trial, which involves the sufficiency of the evidence to support the verdict, and the ruling excluding certain testimony offered by the defendant. It appears from the evidence that on April 7, 1894 in a certain proceeding instituted by the Comptroller against Dime Savings Bank *et al.*, the Comptroller applied to the Judge of the Circuit Court of Duval county for the appointment of a receiver under and in pursuance of section 2192 Rev. Stats. to take charge of the assets of said bank; that plaintiff was on such day appointed such receiver and required and empowered to take charge of all assets of the bank, collect all debts due same, and convert the assets into money, and the officers of the bank were directed to deliver to plaintiff all assets, books and papers belonging or pertaining to the bank, and enjoined from collecting any debts due the bank or taking possession of any of its assets; that E. I. Robinson, president and manager of the bank, in pursuance of the order of court referred to, delivered to plain-

tiff the two notes mentioned in the declaration, one of them reading as follows:

$2,919.70 Jacksonville, Fla., July 10th, 1893.

Eighteen months after date I promise to pay to the order of Dime Savings Bank of Fla. twenty-nine hundred and nineteen 70-100 dollars, with interest after maturity at the rate of ten per cent. per annum until paid, for value received, negotiable and payable at the Dime Savings Bank of Florida, and if not paid at maturity this note may be placed in the hands of an attorney at law for collection, and in that event it is agreed and promised by the makers and endorsers severally to pay an additional sum of fifty dollars for attorneys' fees.

(Signed) Elizabeth S. Robinson.

Indorsed on the back as follows:

Aug. 19th, 1893, received on within note to this date

$838.70

E. I. Robinson, Trs.

Nov. 23rd, 1893, paid on within note to this date

$708.37

E. I. Robinson, Trs.

The other note was identical in language, except that it was executed by Roland Woodward, payable to the order of Elizabeth S. Robinson six months after date, its principal amount was $576.57, and it was dated Nov. 14, 1893, and endorsed on the back simply: "Elizabeth S. Robinson."

1. The motion for a new trial questions the sufficiency of the evidence to support the verdict as to the Woodward note. The third count alleges that due notice of its dishonor was given defendant, and her plea put

this allegation in issue. Upon that issue the burden of proof was upon the plaintiff. No evidence was offered tending to show notice to the defendant in person, but plaintiff testified that he notified E. I. Robinson, her son, of the nonpayment of the note, and produced evidence tending to show that the latter was authorized to receive notice for defendant. To charge a party with notice of the dishonor of a bill or note because notice was given to another person as his agent, it must be shown that it was within the scope of the agent's authority to receive such notice. New York and Alabama Contracting Company v. Selma Savings Bank, 51 Ala. 305, S. C. 23 Am. Rep. 552; 3 Rand. Com. Paper, §1246. As the judgment is reversed on other grounds and another trial must take place, it will not be necessary to express a positive opinion at this time as to whether the evidence is sufficient to sustain a finding that the alleged agent had authority to receive notice for defendant. Upon this question it is sufficient to say that the evidence is very meagre, and we have grave doubts as to its sufficiency.

2. As to the other note the principal controversy arose upon the plea of payment. Two credits, one dated August 19, 1893, the other November 23, 1893, were endorsed on the note before it was delivered to plaintiff. Plaintiff's evidence tended to show that defendant was a stockholder in the bank from its organization; that she had a deposit account with the bank which was overdrawn, and that the note was given for the amount of this overdrawal; that no credit for the amount of this note was entered upon the account, but that defendant continued to deposit and draw upon those deposits—the items being entered upon the general account—until August 19, 1893, when the bank closed its doors; that on August 19, 1893, the items of defendant's account subse-

quent to the date the note was given showed a balance
in her favor, and that this balance was entered as a cred-
it upon her note by the manager and treasurer of the
bank before the receiver was appointed. The defendant's
evidence was to the same effect, and the jury should
have allowed this item as a payment on the note. We are
aware that under the statutes of some States regulating
the organization and business of savings banks, it has
been held that such institutions are mere trustees for the
benefit of their depositors, and that depositors therein
do not stand upon the footing of creditors or depositors
in commercial banks (Stockton v. Merchants and Labor-
ers Savings Bank, 32 N. J. Eq. 163); but our statutes
providing for the organization of savings banks and reg-
ulating their business do not admit of such construction.
Depositors of such banks in this State are creditors of
the bank and have the same rights as depositors in oth-
er banks· People v. Merchants & Traders' Sav. Inst. 92
N. Y. 7; Reed v. Home Savings Bank, 130 Mass. 443, S.
C. 39 Am. Rep. 468. This being true, it was perfectly
legitimate for the bank and the defendant to agree that
the balance of the deposits to the credit of the defendant
be credited as a payment on the note owing by her to
the bank, particularly as the note due the bank really
represented a part of the same account upon which the
deposits so credited were originally entered. It is claim-
ed, however, that under section 2193 Rev. Stats. the
parties could not legally credit the deposit upon the
note. That section reads as follows: "All transfers of
notes, bonds, bills of exchange or other evidences of
debt owing to any banking company, or of deposits to
its credit; all assignments of mortgages, securities on
real estate, or of any judgments or decrees in its favor,
all deposits of money, bullion or other valuable thing for

its use or for the use of any of its stockholders or cred-
itors, and all payments of money to either, made after
the commission of an act of insolvency or in contem-
plation thereof made with a view to the preference of
one creditor to another shall be utterly null and void.'
This statute is very similar to a provision of the National
banking laws, and is directed against certain transac-
tions taking place after the commission of an act of in-
solvency or in contemplation thereof made with a view
to the preference of one creditor to another. In this case
the bank did not suspend payment until August 19,
1893; these deposits were all made prior to that date;
none appeared to have been made in contemplation
of the bank's insolvency, or after the commission of an act
of insolvency, with a view to the preference of one
creditor over another. The balance of the deposit would
as against the receiver be a proper set off against the
note had no credit therefor been entered on the note by
the bank officials. The credit made by the bank of the
balance of the deposit, before the receiver was appoint-
ed was proper, and the jury should have allowed it. Scott
v. Armstrong, 146 U. S. 499, 13 Sup. Ct. Rep. 148;
Adams v. Spokane Drug Co., 57 Fed. Rep. 888; Yard-
ley v. Clothier, 2 C. C. A. 349, 51 Fed. Rep. 506.

3. As to the second credit endorsed on the note
Nov. 23, 1893: The evidence shows that after the bank
closed its doors the defendant purchased from various
depositors their deposits in the bank taking transfers of
their deposit books, and that the amount of these depos-
its so transferred to defendant was entered by the treas-
urer of the bank as a credit upon her note as of the date
stated. The effect of this transaction would be to pre-
fer the claims of the depositors whose deposits were so
purchased to other creditors, and under the statute

quoted the transaction was illegal. The jury properly refused to allow this amount so claimed as a credit.

4. The defendant offered to prove that during the summer of 1893 before the bank closed its doors, a draft for $1,071.50 was drawn upon E. I. Robinson by the Southern Mutual Building and Loan Association of Atlanta, Ga., for collections made by him for said association and deposited in the bank; that this amount was due said association for money which he had collected for it and deposited in the bank; that as manager of the bank and acting under the advice of the bank's attorney, E. I. Robinson requested defendant to assume and pay said obligation and agreed to give her credit for that amount on the note sued on, to which proposition defendant agreed; that by her direction E. I. Robinson wrote the president of the association to the effect that defendant would become responsible for the amount and would send the association stock of the Marion Land & Improvement Co., to secure the amount; that the association consented to this arrangement; that afterward when the draft became due Apr. 18, 1894, after the appointment of the receiver, defendant paid it in full; that the draft with collateral stock was returned marked paid and was then in possession of the receiver of the bank; that this credit was not endorsed on the note for the reason that defendant had not actually paid the amount when the note was delivered to the receiver. The court excluded this evidence on objections by plaintiff, but the grounds of objection are not stated. It is argued by defendant in error that the debt mentioned in this excluded evidence was the individual debt of E. I. Robinson, but the proof offered tended to show that the bank had received the money on deposit which Robinson had collected, and it was therefore liable for same either to Rob-

inson or to his principal. If the bank, then, had this money on deposit or owed for it, it had the right to assume payment of the draft drawn on Robinson, and to authorize defendant to pay the draft agreeing to credit same on her note to the bank, provided the transaction was not with a view to prefer one creditor to another and made in contemplation of the bank's insolvency or after the commission of an act of insolvency by it. The fact that the payment was not actually made by defendant until after insolvency, would not affect the question, if she had bound herself to pay it at a time when the bank had committed no act of insolvency and when insolvency was not contemplated. The testimony offered did not show upon its face that the transaction came within the prohibition of the statute, nor was the other evidence in the case of such a conclusive character as to show that this particular transaction was clearly illegal. The rejected evidence should have been submitted to the jury for them to determine whether the transaction took place at such a time and for such a purpose as the statute prohibited, under proper instructions as to the law from the court.

As the validity of the other small credits claimed as payments on the note by defendant depends upon the principles discussed as to the other payments claimed, it is not necessary to refer to them specifically.

The judgment is reversed and a new trial granted.