WILLIAMS, RECEIVER, APPELLANT, v. JOHNSON, RESPONDENT.

(No. 3,559.)

(Submitted October 7, 1914. Decided November 21, 1914.]

[144 Pac. 768.]

*Banks and Banking—Receivers—Insolvency—Preference—Savings and Commercial Banks—Setoff and Counterclaim—Deposits—Interest.*

Banks and Banking—Receivers—Setoff.

1. A receiver of an insolvent commercial bank occupies no higher position relative to the rights of those indebted to it than the bank did before his appointment. He acts as assignee of the insolvent, and as such must, in the collection of its assets, recognize the right of setoff where it exists just as the bank would have been compelled to do had it sought to enforce collection prior to insolvency.

[As to when setoff is maintainable against receivers of insolvent banks, see note in 47 Am. St. Rep. 142.]

Same—Depositors—Debtors—Setoff.

2. In an action by the receiver of an insolvent commercial bank against a depositor to recover on a promissory note, *held* that the latter was entitled to a setoff, by way of counterclaim, to the amount of his deposit at the time the bank suspended, and that such setoff did not give defendant an unlawful preference over the other creditors of the bank.

Same—Savings and Commercial Banks.

3. A bank organized under sections 3923–3944, Revised Codes, with a capital stock, and the profits of which are to be divided among the stockholders is a commercial and not a savings bank, and the fact that it bears the name of "Savings Bank" does not require it to be classed under the head of that class of banks, within the meaning of the statute (Rev. Codes, secs. 3945–3958), providing for their organization and regulation.

Same—Insolvency—Deposits—Setoff—Interest.
 4.   Since the effect of the suspension and declared insolvency of a bank is to make deposits due and actionable, defendant was entitled to interest on his deposit from the date the receiver took possession (the day of suspension) until the date of the judgment.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by F. D. Williams, as receiver of the State Savings Bank of Butte, against E. T. Johnson. From a judgment for defendant, plaintiff appeals. Affirmed.

*Messrs. Kremer, Sanders & Kremer,* for Appellant, submitted a brief; *Mr. Louis P. Sanders* argued the cause orally.

In approaching the argument herein, we very frankly confess that the rule laid down in the case of *Mercer* v. *Dyer,* 15 Mont. 317, 39 Pac. 314, will have much to do with the decision of the court herein. However, the fund involved in the *Mercer Case* was a trust fund—not in the sense that all the funds in the possession of the receiver constitute trust funds, but the fund discussed in that case was a trust fund when deposited in the bank, while no such attribute attaches to either of the deposits of the respondent herein. In the *Mercer Case,* the officers of the bank knew that such deposit was a trust fund, and it needs no citation of cases to sustain the contention that funds originally deposited in a bank as trust funds do not partake of the nature of funds belonging to a general depositor and open to checking account, as is the case herein in so far as the two deposits here are concerned. There are other Montana cases to which we call attention, not particularly because they are enlightening upon any question involved herein, but they are cited merely to bring to the attention of the court such Montana decisions as in any way may be relevant in the discussion to follow. They are *Stadler* v. *First Nat. Bank,* 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111; *Yellowstone County* v. *First Trust & Sav. Bank,* 46 Mont. 439, 128 Pac. 596.

The stipulation of facts discloses that the State Savings Bank, at the time of its suspension, was doing business pursuant to

the law of Montana as found in sections 3923 to 3944 of the Revised Codes of Montana, 1907, and Acts amendatory thereto. A comparison between these sections and those found in Chapter III, entitled "Savings Bank," beginning with section 3945 and ending with section 3958, discloses that the powers under both chapters were comprehensive enough to permit us now to contend that although strictly speaking, the bank was conducting business under Chapter II, it was likewise doing business as a savings institution, and we submit that the apparent distinction, which is found to exist between the usual rule of setoff where the bank is conducting general banking business, and the rule applicable to savings institutions, applies here.

"Ordinarily, a depositor in a savings bank, who is also a debtor to the bank as a borrower of its funds, cannot, upon the insolvency of the bank, set off the amount of his deposit against his indebtedness." (*Osborn* v. *Byrne,* 43 Conn. 155, 21 Am. Rep. 641; *Barnstable Sav. Bank* v. *Snow,* 128 Mass. 512.) "Upon the insolvency of a savings bank, a general depositor cannot set off his deposit against a debt due from him to the bank. He is not a creditor. His relation to the assets is like that of a stockholder in a bank of discount." (*Cogswell* v. *Rockingham Ten Cents Sav. Bank,* 59 N. H. 43; *Hall* v. *Paris,* 59 N. H. 71.) "A depositor in an insolvent savings bank, who also owes it for borrowed money, cannot set off his deposit against such debt, although the deposit consisted of borrowed money." (*Hannon* v. *Williams,* 34 N. J. Eq. (7 Stew.) 255, 38 Am. Rep. 378.) "Upon the insolvency of a bank, its general creditors must be paid *pro rata.*" (*McLain* v. *Wallace,* 103 Ind. 562, 5 N. E. 911; *Clark* v. *Chicago Title & Trust Co.,* 186 Ill. 440, 78 Am. St. Rep. 294, 53 L. R. A. 232, 57 N. E. 1061; *Schmelling* v. *State,* 57 Neb. 562, 78 N. W. 279; *Bank of Blackwell* v. *Dean,* 9 Okl. 626, 60 Pac. 226; *Willoughby* v. *Weinberger,* 15 Okl. 226, 79 Pac. 777; *St. Mary's Church of Potsdam* v. *National Bank of Potsdam,* 23 Misc. Rep. 588, 52 N. Y. Supp. 802.) "Depositors in savings institutions stand in the attitude of partners, and on the insolvency of the institution, become owners

in common of the assets and entitled to share the same after payment of privilege debts in the proportion which their respective amounts bear and the net amount ultimately to be realized." (*Kennedy* v. *New Orleans Savings Inst.,* 36 La. Ann. 1.)   On the facts in this case we submit that neither of the deposits of the respondent are entitled to be offset against his debt to the bank.   Respondent should be compelled to pay the amount of the note with interest, and then, in the due course of the administration of the receivership, he should participate ratably with other general creditors in respect to his two deposits.

An examination of the authorities which were followed in the case of *Mercer* v. *Dyer, supra,* and which we are frank to say apparently constitute the weight of authority disclose failure to discuss, so far as we have been able to read them, the inequitable advantage thereunder given to a creditor of an insolvent bank who happens fortuitously to have been a debtor of the bank.   Under an application of the rule laid down in the *Mercer Case,* creditors (but not debtors) of a bank share *pro rata* in dividends declared, receiving only a percentage of their deposits if such bank does not pay out in full.   On the other hand, creditors (being also debtors) of a bank receive dollar for dollar, thereby enjoying a preference over the former class.

Whatever may be the logic of the cases which permit a setoff, it is impossible to escape from the palpable inequality that is permitted under the doctrine upon which respondent relied and which was adopted by the trial court.   It may be the law that he who had been able to borrow shall be preferred over him who has not, but such a doctrine is unfair and should not be sanctioned.

No one will dispute the fact that a liability due from a debtor to an insolvent bank cannot be diminished or changed.   It is a fixed debt which must be paid.   On the other hand, a deposit in an insolvent bank possesses none of these attributes.   If the bank pays out in full, the depositor receives the amount of his deposit.   If the bank pays less than all, the depositor shares ratably.   His liability to the bank and the bank's liability to

him are wholly independent, and while one is fixed, the other is not. Simultaneously with insolvency the deposit is susceptible to change and shrinkage, but not so with the liability of the depositor to the bank.

With insolvency, the assets of the bank, so far as represented by deposits, ought to become impressed with the character of trust funds for ratable distribution among its depositors independently of the fact that the depositor owes the bank. Any other rule ignores the actual relation between a liability to the bank, which never changes, and a liability from the bank, which, as pointed out, is always subject to diminution. Any other doctrine emasculates the rule that assets of an insolvent bank constitute a trust fund for equitable distribution among the bank's creditors. It loses sight of the maxim that equality is equity. The authorities to the contrary base their reasoning on the proposition that the debtor of an insolvent bank loses none of his rights by the act of insolvency. (See *Van Wagoner* v. *Paterson Gaslight Co.,* 23 N. J. L. 283, cited in the *Mercer Case, supra.*) If he has a deposit in and owes the bank, he belongs to a favored class. If he has only a deposit in the bank, he is relegated to the class which must take what they can. There is no reason for holding that the one loses none of his rights, while the other does. It works a preference which without exception bears wholly upon the poor, for the poor are frequently depositors but rarely borrowers. Preferences should exist only through specific statutes allowing them, and in the absence of a law effecting such a result, courts should be loath to favor one class over the other.

*Mr. Earle N. Genzberger,* for Respondent, submitted a brief and argued the cause orally.

The attempted distinction drawn by counsel for appellant between the case of *Mercer* v. *Dyer,* 15 Mont. 317, 39 Pac. 314, and the case at bar is without merit. The cases quoted in the opinion clearly announce the overwhelming rule applicable, and no court now has the hardihood to dispute the reasoning and

logic found in the opinion from the case of *Van Wagoner* v. *Paterson Gaslight Co.*, 23 N. J. L. 283. The case of *Stadler* v. *First Nat. Bank*, 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111, though in some respects different from the case at bar as to the facts, supports the general rule of equitable setoff for which respondent contends. If the court is inclined to feel that the Montana cases are not sufficient to convince it that respondent should prevail herein, we submit the following additional authorities: *Thompson* v. *Union Trust Co.*, 130 Mich. 508, 97 Am. St. Rep. 494, 90 N. W. 294; *Jack* v. *Klepser*, 196 Pa. 187, 79 Am. St. Rep. 699, 46 Atl. 479; *Balbach* v. *Frelinghuysen*, 15 Fed. 675; *Colton* v. *Dover Perpetual Building & Loan Assn. of Baltimore*, 90 Md. 85, 78 Am. St. Rep. 431, 46 L. R. A. 388, 45 Atl. 23; *Bernstein* v. *Coburn*, 49 Neb. 734, 68 N. W. 1021; *State* v. *Brobston*, 94 Ga. 95, 47 Am. St. Rep. 138, 21 S. E. 146; *Miller* v. *Franklin Bank*, 1 Paige (N. Y.), 444; *Fort* v. *McCully*, 59 Barb. (N. Y.) 87; *New Amsterdam Sav. Bank* v. *Tartter*, 54 How. Pr. (N. Y.) 385; *Sickels* v. *Herold*, 15 Misc. Rep. 116, 36 N. Y. Supp. 488; *Davis* v. *Industrial Mfg. Co.*, 114 N. C. 321, 23 L. R. A. 322, 19 S. E. 371; *In re Commercial Bank*, 4 Ohio Dec. 108; *Jordan* v. *Sharlock*, 84 Pa. 366, 24 Am. Rep. 198; *Jones* v. *Piening*, 85 Wis. 264, 55 N. W. 413; *Yardley* v. *Clothier*, 51 Fed. 506, 2 C. C. A. 349, 17 L. R. A. 462; *Adams* v. *Spokane Drug Co.*, 57 Fed. 888, 23 L. R. A. 334; *Hade* v. *McVay*, 31 Ohio St. 231. In 5 Cyc. 570 it is said: "A depositor is often indebted to the failed bank on notes or other obligations. If this obligation has matured, his liability may be reduced by setting off his deposit or a claim for services against the same, and this right is unaffected by the appointment of a receiver. The rule is almost as general that his deposit can be thus applied even though his obligation was not due at the time of the bank's insolvency." The foregoing is the prevailing rule in Georgia, Illinois, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, Nebraska, New York, North Carolina, Ohio, Pennsylvania and Wisconsin and is also sustained by various decisions of the supreme court of the United States, particularly the case of

*Scott* v. *Armstrong,* 146 U. S. 499, 36 L. Ed. 1059, 13 Sup. Ct. Rep. 148, which case in turn is approved and cited in the case of *Mercer* v. *Dyer, supra.*

Counsel for appellant seek to point out a distinction that exists in the law as applied to savings banks, whereunder depositors in such institutions are held to be in the nature of copartners, *etc.* We submit there is neither reason nor recognized law for such a contention, and appellant occupies toward the respondent the identical relation that a depositor of a national bank would. There is no statute to be found in Montana, under the laws of which the State Savings Bank was organized, that deprives appellant from all the rights of setoff that are accorded generally to depositors of insolvent banks. "Depositors in savings banks organized under state laws are creditors of the bank and have the same rights as depositors of other banks." (*Robinson* v. *Aird,* 43 Fla. 30, 29 South. 633; *Ladd* v. *Androscoggin County Sav. Bank,* 96 Me. 520, 52 Atl. 1016; *Crosby* v. *Bowery Sav. Bank,* 67 How. Pr. (N. Y.) 329, 50 N. Y. Sup. Ct. 453; rules and regulations of pass-book binding; *Chase* v. *Waterbury Savings Bank,* 77 Conn. 295, 1 Ann. Cas. 96, 69 L. R. A. 329, 59 Atl. 37; *Langdale* v. *Citizens' Bank of Savannah,* 121 Ga. 105, 104 Am. St. Rep. 94, 2 Ann. Cas. 257, 69 L. R. A. 341, 48 S. E. 708; also *Cosgrove* v. *Provident Inst.,* 64 N. J. L. 653, 46 Atl. 617; *Ferguson* v. *Harlem Sav. Bank,* 43 Misc. Rep. 10, 86 N. Y. Supp. 825; see, also, 5 Cyc. 611, F, (2).) No distinction can be drawn between the powers given under trust companies pursuant to which the State Savings Bank operated as shown by the stipulated facts, and those given savings banks, so as to enable appellant to contend that the decisions cited by him as to savings banks prohibit setoffs in the case at bar. (See cases cited, Kerr's Cyc. Code of California, Civil Code, Part One, sec. 571, p. 538; *Mitchell* v. *Beckman,* 64 Cal. 117, 28 Pac. 110.) Although the State Savings Bank accepted funds designated as "savings deposits," this in no sense affected the general relation of debtor and creditor as between the bank and the depositor, and the same rule of setoff

applies to these deposits as to general checking deposits. The
only difference was that one could be withdrawn at stated in-
tervals to draw interest; the other was subject to check at any
time without interest. The State Savings Bank was not a
savings institution in the sense contemplated by the cases cited
by appellant.

In addition to the foregoing authorities amply sustaining re-
spondent's position, we submit the additional citations if the
court considers it necessary further to investigate the questions
involved: *Hayden* v. *Citizens' Nat. Bank of Baltimore,* 120 Md.
163, Ann. Cas. 1915A, 686, 46 L. R. A. (n. s.) 1059, 87 Atl. 672;
*Richardson* v. *Anderson,* 109 Md. 641, 130 Am. St. Rep. 543, 25
L. R. A. (n. s.) 393, 72 Atl. 485; Morris on Banks and Banking,
sec. 632; *City of Los Angeles* v. *State Loan & Trust Co.,* 109 Cal.
396, 42 Pac. 149; *Wells* v. *Black,* 117 Cal. 157, 59 Am. St. Rep.
162, 37 L. R. A. 619, 48 Pac. 1090; *Hall* v. *Burrell,* 22 Colo.
App. 278, 124 Pac. 751; 5 Cyc. 569.

Upon the question of interest generally, we invite the atten-
tion of the court to the case of *Flynn* v. *American Banking &
Trust Co.,* 104 Me. 141, 129 Am. St. Rep. 378, 19 L. R. A. (n. s.)
428, and note, 69 Atl. 771, and also the case of *People* v. *Mer-
chants' Trust Co.,* 187 N. Y. 293, 79 N. E. 1004, 116 App. Div.
41, 101 N. Y. Supp. 255.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

This action was brought by plaintiff, as receiver of the Butte
Savings Bank, to recover the sum of $1,000 due from defendant
to the bank upon a demand note for borrowed money, dated
May 5, 1914, together with interest at the rate of eight per cent
per annum. Though formal pleadings were filed, the cause was
submitted to the trial court upon an agreed statement of facts,
which may be epitomized as follows: The bank is a corporation
organized under the laws of Montana as a savings trust deposit
and security association, and, at the date of the execution of
the note in controversy, was engaged at Butte, Montana, in con-

ducting the business such corporations are authorized to conduct under the provisions of section 3937 of the Revised Codes, including the holding of money on deposit payable on time or on demand, as well as in trust to accumulate at an agreed rate of interest. On August 5, 1914, it having become insolvent, the state examiner, by the order of the governor and attorney general of the state, took possession of it and all its assets and closed its doors. Thereafter the state, through the attorney general, brought an action to have its business adjusted and wound up and distribution of its assets made through the agency of a receiver. By agreement between the attorney general and the bank, plaintiff was appointed receiver. He at once qualified, took over all the assets from the examiner, and proceeded to perform his duties. Among the assets he found the note in question. When the examiner took possession, the defendant had on deposit subject to check, a balance of $479.09. He also had a savings account for which he held a pass-book, showing a balance due him of $215.33. Under the rules adopted by the bank, balances on savings accounts remaining on deposit for three months or more drew interest at the rate of four per cent per annum; the accruing interest being capitalized on the 1st days of January and July. The bank at its option could require notice of withdrawals of savings deposits as follows: Thirty days' notice for sums not exceeding $100; sixty days' for sums exceeding $100 and less than $500; ninety days' for sums of $500 and less than $1,000, *etc.* The sum due defendant on his savings account consisted of his balance, with interest added up to July 1, 1914. On August 20 the plaintiff demanded of defendant payment of the full amount of his note. The defendant demanded that the plaintiff apply, as a part payment of the amount of the note, the balance on his check account, and also the balance shown by his pass-book on July 1, with interest at the rate of four per cent per annum from that date. He accompanied this demand with an offer to pay the balance remaining due on the note. The demand and offer were refused, on the ground that the defendant was entitled to such

proportion of these amounts only as will be found due ratably to all other creditors of the bank upon the final distribution of its assets. On August 3, 1914, the bank had notified all its customers having savings accounts with it that it would thereafter require notice of withdrawals as provided by its rules. Defendant did not at any time give notice that he intended to make withdrawal of his account or any part of it. At the trial, defendant contended that he was entitled to have credited upon the amount of the note the balance of his check account, with legal interest from August 20, when he demanded a settlement with the plaintiff, together with the balance on his savings account, with interest at the rate of four per cent from July 1. The court sustained both contentions, except that it disallowed interest on the first balance, and rendered judgment for the plaintiff for $335.96, balance of principal and interest. The plaintiff has appealed.

At the hearing in this court, counsel for the plaintiff made the concession that, when the bank ceased to do business, all balances on savings accounts became due without previous notice to the bank or the receiver, thus eliminating this feature of the case. They submitted the question whether, upon the facts disclosed by the statement, the decision of the trial court allowing defendant credit, by way of counterclaims, for the amounts of his deposits, does not give him an unlawful preference over other depositors of the bank. Incidentally they also presented the inquiry whether the defendant is entitled to interest on either or both of his balances.

By a practically unanimous line of decisions, the courts have held that, when a receiver takes charge of the estate of an [1] insolvent, he occupies a position in no respect different from that of the insolvent prior to the appointment. He becomes merely the assignee of the insolvent, and has exactly the same rights. He is not an innocent purchaser in any sense of that term. An ordinary assignee takes an assignment of a thing in action "without prejudice to any setoff or other defense existing at the time of, or before notice of the assignment." (Rev.

Codes, sec. 6478; *Stadler* v. *First Nat. Bank,* 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111; *Cornish* v. *Woolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4.) The fact that the receiver becomes the assignee by virtue of his appointment does not put him upon any higher ground than when the assignment is the result of private contract. He is the arm of the court to accomplish the distribution of the assets of the insolvent. (*Colton* v. *Drovers' etc. Assn.,* 90 Md. 85, 78 Am. St. Rep. 431, 46 L. R. A. 388, 45 Atl. 23; *People* v. *California Safe Deposit & Trust Co.,* 168 Cal. 241, 141 Pac. 1181; *Receivers of People's Bank* v. *Paterson Gas L. Co.,* 23 N. J. L. 283; *Farmers' Deposit Nat. Bank* v. *Penn Bank,* 123 Pa. 283, 2 L. R. A. 273, 16 Atl. 761; 23 Am. & Eng. Ency. of Law, 2d ed., 1074.) On this subject Mr. Pomeroy says: ''The general rule is that a receiver acquires no greater interest in an estate than the one from whom he takes; and it follows that choses in action pass to him subject to any right of setoff existing at the time of his appointment.'' (Pomeroy Eq. Remedies, secs. 186, 187.) The rule applies to a receiver of an insolvent bank, and the rights of those indebted to the bank are to be determined by their relations to it as they existed at the time the receiver was appointed. It is as much his duty to recognize and allow the right of setoff when it exists as it would have been if the bank itself had sought to enforce the collection of the particular claim. It was so held by this court in the case of *Mercer* v. *Dyer,* 15 Mont. 317, 39 Pac. 314, following the authority of *Scott* v. *Armstrong,* 146 U. S. 499, 36 L. Ed. 1059, 13 Sup. Ct. Rep. 148; *Yardley* v. *Clothier* (C. C.), 49 Fed. 337; Id., 51 Fed. 506, 2 C. C. A. 349, 17 L. R. A. 462; and *Receivers of People's Bank* v. *Paterson Gas L. Co., supra.* Further discussion of the subject in this jurisdiction, we think, ought to be foreclosed by this case. Counsel insist that the case is not decisive, for the reason that the claim involved was a trust fund when deposited in the bank; that it retained this attribute in the hands of the receiver; and that, being for this reason recoverable from him as a preferred claim, it was properly pleadable as a setoff. As we understand the case, the court

decided these propositions: (1) That the right of setoff was not impaired by the insolvency of the bank; and (2) that it was not prohibited by the national bank law. (U. S. Rev. Stats., sec. 5242; U. S. Comp. Stats. 1913, sec. 9834.) The mention of the character of the fund in the latter part of the opinion was made incidentally in discussing the question whether the warrant held by the bank at the time it became insolvent was due, and it and the deposit claimed as a setoff constituted mutual claims between the bank and the county. The case of *Stadler* v. *First Nat. Bank* recognized the rule as established by this case. Were it not decisive, we should nevertheless feel bound to yield our judgment to the overwhelming weight of authority on the subject. To the citations made above we may add the following: *Thompson* v. *Union Trust Co.,* 130 Mich. 508, 97 Am. St. Rep. 494, 90 N. W. 294; *Jack* v. *Klepser,* 196 Pa. 187, 79 Am. St. Rep. 699, 46 Atl. 479; *Balbach* v. *Frelinghuysen* (C. C.), 15 Fed. 675; *Salladin* v. *Mitchell,* 42 Neb. 859, 61 N. W. 127; *State* v. *Brobston,* 94 Ga. 95, 47 Am. St. Rep. 138, 21 S. E. 146; *Miller* v. *Receivers of Franklin Bank* (N. Y.), 1 Paige, 444; *Fort* v. *McCully* (N. Y.), 59 Barb. 87; *Davis* v. *Industrial Mfg. Co.,* 114 N. C. 321, 23 L. R. A. 322, 19 S. E. 371; *Jones* v. *Piening,* 85 Wis. 264, 55 N. W. 413; *Adams* v. *Spokane Drug Co* (C. C.), 57 Fed. 888, 23 L. R. A. 334; *Hade* v. *McVay,* 31 Ohio St. 231; *McCagg* v. *Woodman,* 28 Ill. 84; *Re Assignment of Hamilton,* 26 Or. 579, 38 Pac. 1088; *Steelman* v. *Atchley,* 98 Ark. 294, 32 L. R. A. (n. s.) 1060, 135 S. W. 902; *Osborn* v. *Byrne,* 43 Conn. 155, 21 Am. Rep. 641; *Tourtelot* v. *Whithed,* 9 N. D. 467, 84 N. W. 8; see, also, Michie on Banks and Banking, 634; Pomeroy's Eq. Remedies, sec. 188.

The relation of the defendant to the bank was not that of a **[2]** creditor only. He was also its debtor; and though his debt exceeded his claim against the bank, in an action by the bank against him he would have been entitled to a setoff by way of counterclaim. The claim of the bank was a valuable asset only so far as it was not offset by its debt to him. That he is

entitled to his discharge upon payment of the difference does not give him a preference over any other creditor.

Counsel argue, however, that this general rule can have no application to this case, for the reasons that the bank was doing [3] business as a savings institution; that the defendant occupies toward its assets a relation similar to that of a stockholder in a commercial bank; and hence that his rights are to be determined by the rule applicable to such stockholders. In support of this contention they quote from Michie on Banks and Banking as follows: "Upon the insolvency of a savings bank, an ordinary depositor cannot set off his deposit against a debt due from him to the bank, and this is so though the debt is for borrowed money. Neither the depositor's pledge of his deposit book to the bank as collateral security, nor the bank's expectation, at the time the debt is created, that he will apply his deposit in payment thereof, entitle him to set it off in payment of the debt." (Vol. 3, p. 2246.) They also cite several cases upon which this author bases his text, among them *Osborn* v. *Byrne, supra; Cogwell* v. *Rockingham etc. Sav. Bank,* 59 N. H. 43; *Stockton* v. *Mechanics & Laborers' Sav. Bank,* 32 N. J. Eq. 163; and *Hannon* v. *Williams,* 34 N. J. Eq. 255, 38 Am. Rep. 378. We do not doubt the propriety or soundness of the rule announced in these cases. The character of the institution under consideration in each of them was such as to distinguish it from one organized and conducted for commercial purposes. Such an institution has no capital stock. Its incorporators have no property interest in the funds deposited in it. Their sole office is to manage and invest them as guardians and trustees for the depositors. The latter alone are interested in the prosperity of the institution. The assets are its invested funds made up of the common contributions of all the depositors. All the profits of the business are divided among the depositors or accumulated in a surplus fund for the common benefit or for greater security. Indeed, such a bank is treated in all these cases as a *quasi*-charitable and benevolent institution. One of the kind under consideration here has none of the attributes of

such an institution. By reference to the statute providing for its organization and regulating its business (Rev. Codes, secs. 3923-3944), it will be found that it must be classed among corporations organized for profit and as bearing the same general relation to its depositors as do such corporations. It must have a capital stock, which is represented by shares issued to the stockholders and transferable upon its books by the mode provided by its by-laws. Its board of directors invests the capital stock and deposits for the profit of the stockholders. The stockholders are liable for the debts incurred by it to the extent of the value of the shares held by them. It may engage in eleven different kinds of business, none of them partaking in any measure of the nature of the business of a savings institution, except that deposits may be received and held by it for accumulation at such a rate of interest as may be agreed upon. Its profits are divided among the stockholders—not the depositors. The latter have no interest in them. Its property is subject to taxation in the same manner as that of national banks. It thus appears that, though the insolvent bears the name "Butte Savings Bank," it is not a "savings bank" within the meaning of the cases referred to *supra,* but a "commercial bank" pure and simple. The distinction between institutions falling within the two classes, has been recognized by the courts and the rights of depositors determined accordingly. (*Robinson* v. *Aird,* 43 Fla. 30, 29 South. 633; *People* v. *Mechanics & Traders' Sav. Inst.,* 92 N. Y. 7.) Nor does the designation it bears require it to be classed under the head of savings banks, within the meaning of the statute providing for the organization and regulation of savings banks, as such, under our Code. (Rev. Codes, secs. 3945-3958.) It was not organized under these provisions. Even so, it would seem that the relation between it and its depositors would not be governed by the rule stated by Mr. Michie, *supra.* By an examination of these provisions it will be found that, subject to certain restrictions as to the character of the business which may be conducted by them and requirements to be observed for the greater security of the depositors, they are

not benevolent or charitable in their nature, but are organized primarily for the benefit of the stockholders, who are entitled to all the profits of the business after the depositors have been paid such rates of interest upon their deposits as may be provided by the by-laws. Whether the rule contended for applies to them we shall not undertake to decide, because it does not arise in this case. We are clear in the conviction, however, that it cannot justly be applied to a corporation organized for purely commercial purposes, as was the case here.

The effect of the suspension and declared insolvency of the bank was to make the defendant's deposits due and actionable. (*Stadler* v. *First Nat. Bank, supra.*) This being so, [4] he was entitled to receive interest from August 5 until the date of the judgment. (Rev. Codes, sec. 6043; *Hefferlin* v. *Karlman,* 29 Mont. 139, 74 Pac. 201; *Leggat* v. *Gerrick,* 35 Mont. 91, 8. L. R. A. (n. s.) 1238, 88 Pac. 788.) Of the decision of the trial court in this behalf, however, neither party is in position to complain. In fact, the defendant does not complain, because he has not appealed. Nor has he by cross-assignment in his brief asked that the judgment be modified. (Rev. Codes, sec. 7118.) The plaintiff cannot complain, for the reason that the court disallowed interest on the check balance and charged interest on the savings balance, as though the deposit agreement was still in full force. If it remained in force notwithstanding the insolvency of the bank, the allowance was proper as made; otherwise the contract was broken down, and allowance of the legal rate should have been made from the date at which the state auditor took charge.

Judgment affirmed.

*Affirmed.*

MR. JUSTICE SANNER concurs.

MR. JUSTICE HOLLOWAY, being absent, did not hear the argument, and takes no part in the foregoing decision.